Jerardo RODRIGUEZ, Plaintiff,

v.

Larry KINCHELOE, Dennis Koeppen, Hal Sniveley, D. Deal, Defendants.

No. CS–90–164–JLQ.

United States District Court,
E.D. Washington.

March 4, 1991.

Jerardo Rodriguez, pro se.

Pat L. DeMarco, Asst. Atty. Gen., Corrections Div., Olympia, Wash., for defendants.

MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND ORDER OF DISMISSAL WITH PREJUDICE INTER ALIA

QUACKENBUSH, Chief Judge.

BEFORE THE COURT is defendants' Motion for Summary Judgment (Ct.Rec. 35) and plaintiff's Objections and Cross Motion for Summary Judgment (Ct.Rec. 47), heard without oral argument on March 4, 1991. Plaintiff is proceeding pro se; defendants are represented by Pat L. DeMarco. Having reviewed the record and being fully advised in this matter, IT IS HEREBY ORDERED that defendants' Motion for Summary Judgment is GRANTED and plaintiff's Motion for Summary Judgment is DENIED for the following reasons.

## FACTUAL BACKGROUND

Plaintiff Jerardo Rodriguez is a prisoner in custody of the Oregon State Department of Corrections. He brought this action pursuant to 42 U.S.C. § 1983, alleging that defendants violated his civil rights while he was incarcerated at the Washington State Penitentiary (WSP) in Walla Walla, Washington as an Oregon boarder under an Interstate Agreement. Plaintiff filed this complaint on May 11, 1990. Plaintiff was returned to the custody of the Oregon State Department of Corrections on October 11, 1990.

The defendants are officials or employees of the Washington State Department of Corrections (DOC). Defendant Lawrence Kincheloe was, at all times material to this action, the Director of the Division of Prisons. Defendant Dennis Koeppen is an inmate grievance specialist assigned to DOC headquarters in Olympia, Washington. Defendant Hal Snively is Custody Unit Supervisor at WSP and also has served as the grievance coordinator at the main institution. Defendant Donna Deal is a correctional officer at WSP.

Plaintiff's original complaint, and subsequent attempts to amend the complaint, alleged a myriad of claims, many of which were frivolous, such as the alleged propensity of some female guards to act "coquettish" and to wear too much make-up. On August 27, 1990, the court entered an Order allowing plaintiff to proceed in this action only on the issues of (1) whether, on February 6, 1990, a confiscation of the plaintiff's Ace wrap by Correctional Officer Deal constituted deliberate indifference to the plaintiff's serious medical needs, in violation of the Eighth Amendment; and (2) whether the plaintiff's Fourth and Fourteenth Amendment right to privacy was violated by reason of the alleged practice of allowing female officers regularly to view the plaintiff in a state of undress. All other claims were dismissed without prejudice (Ct.Rec. 10). The court subsequently allowed Mr. Rodriguez to file an amended complaint including the two aforementioned claims and an allegation that he was retaliated against for using the prison grievance procedure (Ct.Rec. 6). Mr. Rodriguez seeks compensatory and punitive damages for these alleged constitutional violations, as well as prospective injunctive and declaratory relief.

## ANALYSIS

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Zweig v. Hearst Corp.*, 521 F.2d 1129 (9th Cir.1975), *cert. denied*, 423 U.S. 1025, 96 S.Ct. 469, 46 L.Ed.2d 399. The moving party is entitled to summary judgment as a matter of law where, viewing the evidence and the inferences arising therefrom in favor of the nonmovant, there are no genuine issues of material fact in dis-

pute. Fed.R.Civ.P. 56(c); *Semegen v. Weidner,* 780 F.2d 727 (9th Cir.1985). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang,* 711 F.2d 141 (9th Cir.1983).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon the mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Where the factual context renders the respondent's claim implausible, he must come forward with more persuasive evidence in support of his claim than would otherwise be necessary. *Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determination of whether a fact is material; (2) determination of whether there is a genuine issue of material fact for the trier of fact, as determined by the documents submitted to the court; and (3) consideration of that evidence in light of the appropriate standard of proof. *Anderson, supra.*

As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes which are irrelevant or unnecessary will not be considered. *Id.* at 248, 106 S.Ct. at 2510. Where there is a complete failure of proof concerning an essential element of the nonmoving party's case, all other facts are rendered immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex, supra.*

Given that a fact is determined to be material, summary judgment will not lie if the dispute about that fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson, supra,* 477 U.S. at 248, 106 S.Ct. at 2510. However, there is no genuine issue of fact if, on the record taken as a whole, a rational trier of fact could not find in favor of the party opposing the motion. *Matsushita, supra,* 475 U.S. at 587, 106 S.Ct. at 1356.

The Ninth Circuit distinguishes disputes involving direct evidence from those involving circumstantial evidence offered to resist summary judgment. *See T.W. Elec. Serv., Inc. v. Pacific Contractors Ass'n,* 809 F.2d 626, 630–31 (9th Cir. 1987). Where one party has come forth with direct evidence contrary to that offered by the other, a credibility issue is raised. Credibility determinations are for the trier of fact and are not appropriately resolved by summary judgment. *McLaughlin v. Liu,* 849 F.2d 1205, 1207 (9th Cir.1988). For the purpose of ruling on the motion, where direct evidence produced by the moving party conflicts with direct evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact. *T.W. Elec., supra* at 631–32. However, where the only evidence offered in opposition to the motion for summary judgment is circumstantial evidence, then the court may inquire into the plausibility of inferences drawn from that evidence. *Id.*

Although, in general, reasonableness determinations are for the trier of fact, in certain circumstances reasonableness may be decided as a matter of law. *McKenzie v. Lamb,* 738 F.2d 1005, 1008 (9th Cir.1984). Reasonableness becomes a question of law appropriate for determination on motion for summary judgment "when only one conclusion about the conduct's reasonableness is possible." i.e., when no reasonable jury could find for the party opposing the motion for summary judgment. *West v. State Farm Fire & Cas. Co.,* 868 F.2d 348 (9th Cir.1989).

## CLAIMS FOR INJUNCTIVE AND DECLARATORY RELIEF

█ Plaintiff asks the court to grant declaratory and injunctive relief for alleged unconstitutional conduct that occurred while he was incarcerated at the Washington State Penitentiary. Plaintiff currently is incarcerated in his home state of Oregon and has made no showing whatsoever that he will be returned to Washington or again be subjected to the acts complained of at the WSP. Therefore, plaintiff lacks standing regarding the requested declaratory and injunctive relief.

█ A plaintiff must demonstrate that a "credible threat" exists that he will again be subjected to the specific injury for which he seeks injunctive or declaratory relief. *Kolender v. Lawson*, 461 U.S. 352, 355 n. 3, 103 S.Ct. 1855, 1857 n. 3, 75 L.Ed.2d 903 (1983). A reasonable showing of a "sufficient likelihood" that the plaintiff will again be injured is necessary. *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). What a plaintiff must show is not a probablistic estimate that the general circumstances may produce future harm, but rather an individualized showing that there is "a very significant possibility" that the future harm will ensue. *Nelsen v. King Cy.*, 895 F.2d 1248, 1250 (9th Cir.1990); *Sample v. Johnson*, 771 F.2d 1335, 1343 (9th Cir.1985).

█ Past exposure to harm is largely irrelevant when analyzing claims of standing for injunctive relief that are predicated upon threats of future harm. *O'Shea v. Littleton*, 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974); *Nelsen, supra* at 1251. "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects." *O'Shea, supra*, 414 U.S. at 495–96, 94 S.Ct. at 676.

Mr. Rodriguez has presented no evidence of continuing, present adverse effects from the alleged unconstitutional conduct. Thus, he must show a threat of future harm. "The burden [of] showing a likelihood of recurrence [is] firmly on the plaintiff." *Nelsen, supra* at 1251; *Sample, supra* at 1342. Attempting to anticipate whether and when Mr. Rodriguez might be returned to the WSP is merely speculation and conjecture, which is not sufficient to confer standing. *Nelsen, supra* at 1252–53.

The court concludes that plaintiff lacks standing with regard to his requested declaratory and injunctive relief. Accordingly, defendants' Motion for Summary Judgment as to declaratory and injunctive relief is HEREBY GRANTED. Plaintiff's Cross Motion for Summary Judgment in this regard is HEREBY DENIED. Plaintiff's claims for declaratory and injunctive relief are HEREBY DISMISSED WITHOUT PREJUDICE.

## CLAIMS FOR MONETARY DAMAGES

Plaintiff seeks monetary damages for (1) the alleged Eighth Amendment violation resulting from defendants' deliberate indifference to his serious medical needs when his Ace bandage was confiscated; (2) the alleged Fourth and Fourteenth Amendments violation of his privacy right by the alleged practice of regularly allowing female correctional officers to view the plaintiff in a state of undress; and (3) the alleged retaliation for his grievance activity protected by the First Amendment.

*A. Eighth Amendment Claim*

█ It is undisputed that Correctional Officer Deal confiscated plaintiff's ace wrap bandage on or about February 6, 1990. Plaintiff insists the confiscation took place on February 7, 1990. Whether the incident occurred on February 6 or February 7 is immaterial. The question is whether the confiscation constituted deliberate indifference to plaintiff's serious medical needs.

█ The Eighth Amendment, made applicable to the states by the Fourteenth Amendment, when applied to convicted prisoners, involves consideration of three factors: (1) the wanton and unnecessary infliction of pain; (2) punishment which is disproportionate to the severity of the crime; and (3) conditions which, alone or in

combination, deprive an inmate of the minimal civilized measure of life's necessities. *Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981). "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." *Whitley v. Albers,* 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (citations omitted). Prison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that, in their judgment, are necessary to preserve internal order and discipline and to maintain institutional security. *Id.* at 321–22, 106 S.Ct. at 1085–86.

A prison condition constitutes unnecessary and wanton infliction of pain when that condition violates evolving standards of decency, or is so totally without penological justification that it results in the gratuitous infliction of suffering. *Hoptowit v. Ray,* 682 F.2d 1237, 1246 (9th Cir.1982). For example, deliberate indifference to serious medical needs constitutes such unnecessary and wanton infliction of pain. *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976).

The court accepts as true plaintiff's claim that, at the time the wrap was confiscated, he had in his possession a written health report from the prison medical staff stating that, due to an injured knee, he could wear the wrap indefinitely. However, prior to the confiscation, he had been told he must update that report in order to keep the Ace wrap and the wrap was only taken after he failed to do so. *Affidavit of Deal,* Ct.Rec. 36, exhibit 9. When the Ace wrap was confiscated, plaintiff began using an Ace sleeve, which he had in his cell. *Deposition of Rodriguez,* (Ct.Rec. 36, ex. 1 pp. 43–44. On or about February 9, 1990, the Ace wrap was returned to plaintiff. *Id.* p. 41.

Ronald Fleck, M.D. reviewed plaintiff's medical record and made the following observations:

(1) Mr. Rodriguez suffers from severe psychiatric problems. This plaintiff admits. Prison mental health providers have entered an Axis I diagnosis of paranoid schizophrenia. Plaintiff voluntarily was treated with psychiatric medications while he was at WSP.

(2) In Dr. Fleck's opinion, plaintiff also is hypochondriacal.

(3) Plaintiff also suffers from a condition known as chondromalacia patellae of the left knee, which is a chronic condition that results in inflammation and discomfort behind the knee cap. Dr. Fleck characterizes the condition as not serious and that Mr. Rodriguez's knee was stable and unlikely to give way. It is the doctor's opinion that Mr. Rodriguez could go for several days or even months without using the Ace wrap on his left leg. *Affidavit of Dr. Fleck* (Ct.Rec. 43).

(4) Dr. Fleck also noted that Mr. Rodriguez continued to lift heavy weights, play basketball, and on one occasion Mr. Rodriguez reported he had walked 32 miles after his medical advisors counselled him to curtail those activities. *Id.* at p. 3.

To establish a violation of the Eighth Amendment for the denial of adequate medical care, a prisoner must show that the defendants were deliberately indifferent to his serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. *Id.* at 104–05, 97 S.Ct. at 291–92.

A showing of deliberate indifference requires a showing of dereliction which rises to the level of "unnecessary and wanton infliction of pain." *Id.* at 106, 97 S.Ct. at 292. Neither an inadvertent failure to provide adequate medical care nor an act of negligence states a valid claim of medical mistreatment under the Eighth Amendment. *Anthony v. Dowdle,* 853 F.2d 741, 743 (9th Cir.1988).

Plaintiff has offered no evidence that his knee condition was serious, nor that any prison official was deliberately indifferent

to his medical condition, nor that he suffered unnecessary and wanton infliction of pain. By plaintiff's own admissions the confiscated Ace bandage was returned to him within only a few days and he had an Ace sleeve to use in the interim. Furthermore, plaintiff has not sufficiently challenged the facts that Correctional Officer Deal informed him to get an updated medical health report and also checked with her supervisor as to the appropriate action to take for his failure to do so before she confiscated the bandage. Additionally, it is not disputed that the prison regulation requiring update of the medical health report which allows plaintiff to retain the Ace wrap is legitimately related to prison concerns regarding security and possible suicide attempts. *Affidavit of Kincheloe* (Ct. Rec. 36, ex. 8, p. 5). Plaintiff admits by way of his deposition (Ct.Rec. 36, ex. 1) that he has previously attempted suicide while incarcerated.

In conclusion, the court finds that Mr. Rodriguez has offered no evidence to refute the affidavits submitted in support of defendants' Motion for Summary Judgment as to the Eighth Amendment claim. Rather, he resorts to calling the affiants liars and again attempts to bootstrap additional alleged constitutional violations into this action, which have previously been dismissed by this court as being without merit.

Even drawing all reasonable inferences in favor of Mr. Rodriguez, he has not provided sufficient evidence to raise a genuine issue of material fact as to whether defendants denied, delayed or were intentionally indifferent to his serious medical needs. Plaintiff's failure to make a showing sufficient to establish the existence of an element which is essential to his case, and for which he would bear the burden of proof of trial, requires the conclusion that summary judgment as to the Eighth Amendment claim is appropriate. *Hutchinson v. United States*, 838 F.2d 390 (9th Cir.1988) (citing *Celotex, supra,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265). Accordingly, plaintiff's claims based on the Eighth Amendment SHALL BE DISMISSED.

## B. Fourth Amendment Claims

Plaintiff's second claim is that female correctional officers have the opportunity to view inmates in various stages of nudity while inmates shower, use the toilet, or during a strip search, in violation of his Fourth and Fourteenth Amendment right of privacy.

Incarcerated prisoners retain a limited right to bodily privacy under the Fourth and Fourteenth Amendments. *Michenfelder v. Sumner,* 860 F.2d 328, 333 (9th Cir.1988). The court must examine whether the alleged impingement of plaintiff's right to privacy is reasonably related to legitimate penological interests. *Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987). The court must accord great deference to prison officials' assessments of their penological interests. *Id.* at 92–93, 107 S.Ct. at 2263–2264.

Several cases have recognized prisoners' claims regarding their right not to be viewed naked by the opposite sex. *Michenfelder, supra* at 334; *Grummett v. Rushen,* 779 F.2d 491, 494–45 (9th Cir. 1985). The *Michenfelder* court noted that the presence of female correctional officers at a strip search of male prisoners was not routine, and, in finding that there was no Fourth Amendment violation, that there was no evidence that the incident complained of was anything but an isolated one. *Michenfelder, supra* at 334. The *Grummett* court noted that while a prisoner's interest in not being viewed naked by the opposite sex is a protected one, where observation is infrequent and restricted, court intervention is not warranted. *Grummett, supra* at 495. Both courts balanced the right allegedly invaded against the penological interest underlying the invasion and found the prisoners' privacy expectations to be subordinate.

"The feelings of humiliation and degradation associated with forcibly exposing one's nude body to strangers for visual inspection is beyond dispute." *Thompson v. City of Los Angeles,* 885 F.2d 1439, 1446 (9th Cir.1989). Even so, the privacy right is outweighed by asserted justification, such as the prevention of the introduction

of weapons and other contraband into the jail. *Id.*

Plaintiff offers no evidence to indicate he was ever subjected to a strip search within the view of a female correctional officer or while taking a shower or using the toilet. He contends that he was viewed by a female officer on one occasion while he sat naked on his bed. Like the situation in *Michenfelder supra*, there is no evidence that this incident was anything but an isolated incident.

DOC policy prohibits female correctional officers from conducting a strip search on male prisoners except in an emergency situation. No female correctional officers are assigned to work in any area where strip searches are a regular part of the officers' daily duties. *Institutional Policy and Procedures*, (Ct.Rec. 36, ex. 18) and supporting affidavits.

In maximum security areas such as the Intensive Management Unit (IMU), all floor officers must be male because there are no privacy screens in the inmate shower area. Recently one female sergeant was assigned to work at the IMU. However, a sergeant does not have direct responsibility to conduct strip searches or come in contact with inmates as they shower. *Affidavit of Gale Munden* (Ct.Rec. 36, ex. 10).

All corrections officers conduct periodic tier checks or respond to incidents occurring in living units or other areas of the institution. Defendants admit that occasionally female officers performing these kinds of duties will be in an area where a male inmate is nude, partially dressed or using the toilet. *Affidavit of Gale Munden* (Ct.Rec. 36, ex. 10).

However, there is nothing in the record, other than plaintiff's bold assertions, to indicate any impropriety or unprofessionalism on the part of female staff members. The court is satisfied that brief and casual observations, which may reveal a male inmate in various stages of undress, are nothing more than a necessary part of a correctional officer's duties and essential to maintain the security of the institution.

Other than the IMU, the units where plaintiff was housed at WSP are equipped with some form of privacy screening so that male inmates are not fully exposed to visual inspection as they shower, and prison rules prohibit inmates from going to the shower areas naked. The view of passersby is restricted to the area below the knee and above the shoulder. This is attested to by several affidavits and is confirmed by the pictures of the shower areas, submitted by defendants as attachments 1–12.

The Department of Corrections and WSP subscribe to an equal employment opportunity policy under which most employment opportunities are filled on a gender neutral basis. Therefore, qualified female employees may compete for many job classifications at all the facilities unless the Washington Human Rights Commission approves the position for a gender specific BFOQ. *Affidavit of Kincheloe* (Ct.Rec. 36, ex. 8). Eight DOC officer positions have been approved gender-based BFOQ's. The Department applied for a male designated BFOQ for all positions at the IMU which would have precluded the one female sergeant. The request was denied. *Affidavit of Sherry Hughes* (Ct.Rec. 36, ex. 16).

The record clearly indicates that there are substantial safeguards to prevent any more than the type of observations upheld in *Michenfelder* and *Grummett,* discussed *supra.* There is virtually no evidence to support anything more than a minimal invasion of plaintiff's privacy rights, which is reasonably related to legitimate penological purposes. Accordingly, plaintiff's claims based upon the Fourth and Fourteenth Amendment SHALL BE DISMISSED.

*C. First Amendment Claim*

To state a § 1983 claim based on retaliation for exercising First Amendment rights, plaintiff must allege both that the type of activity he engaged in was protected under the First Amendment, and that the state impermissibly infringed on his right to engage in the protected activity. *Rizzo v. Dawson,* 778 F.2d 527, 530 (9th Cir.1985). Bare allegations of arbitrary retaliation are not, however, enough to avoid dismissal, absent factual support for those allegations. *Id.* at 532, n. 4.

Defendants do not dispute that plaintiff's right to file institutional griev-

ances is a right protected by the First Amendment. Rather, they contend that defendants Snively and Koeppen processed plaintiff's grievance in accordance with established procedures and did not violate plaintiff's constitutional rights.

On or about February 7, 1990, Hal Snively was the grievance coordinator for the main institution. Exhibit of Hal Snively (Ct.Rec. 36, ex. 12.) On February 7, Mr. Snively received an inmate grievance submitted by Mr. Rodriguez dated February 6, complaining that Correctional Officer Deal had confiscated his Ace wrap. Grievance # 9001539 (Ct.Rec. 36, ex. 13). Mr. Snively reviewed the complaints raised and discussed the issues with plaintiff. Mr. Snively determined that the issues raised were not grievable pursuant to the grievance policy, OPG–030 because of the infraction written by Officer Deal regarding the incident (Ct.Rec. 36, ex. 9, 11–13, and 14). The court finds it totally reasonable that prisoners not be allowed to grieve correctional officers every time they are infracted for violating prison rules and regulations.

There is no dispute that the Ace wrap was returned to Mr. Rodriguez on or about February 9, 1990. Rodriguez affidavit (Ct. Rec. 36, ex. 1, p. 41). Even though the issue of plaintiff's grievance had been informally resolved, he submitted an appeal of Mr. Snively's decision to the Grievance Program Manager on February 13, 1990. He was sent a response on April 2, 1990 (Ct.Rec. 36, ex. 15).

Contentions that institutional restrictions constitute an impermissible infringement of First Amendment rights must be analyzed in terms of the correctional institution's legitimate policies and goals of protecting internal order and discipline, maintaining security, and rehabilitating prisoners. Plaintiff must prove not only that their retaliatory actions did not advance legitimate goals of the institution or were not tailored narrowly enough to achieve those goals. *Rizzo, supra* at 532. The limitation "must be no greater than necessary to protect the particular governmental interest involved. *Id.* (citing *Procunier v. Martinez*, 416 U.S. 396, 413, 94 S.Ct. 1800, 1811, 40 L.Ed.2d 224 (1974)).

Under the *Rizzo* analysis, this court finds that plaintiff has failed to offer either direct or circumstantial evidence from which a reasonable inference could be drawn that defendants confiscated his Ace bandage or refused to process his grievance regarding the same because of his having filed previous grievances, and that defendants' actions were not supported by legitimate penological goals. In light of the specific facts of this case, this court concludes that plaintiff's Ace bandage was confiscated because he did not have an up-to-date medical authorization, and legitimate penological concerns about the unauthorized retention of the bandage, which could constitute a legitimate threat to the security of other inmates, guards, or plaintiff himself. Additionally, the court finds that plaintiff's grievance regarding the Ace bandage was considered in accordance with reasonable DOC policy. Accordingly, plaintiff's claim of retaliation for having exercised his First Amendment rights SHALL BE DISMISSED.

The court concludes that plaintiff has failed to produce sufficient direct or circumstantial evidence such that a reasonable trier of fact could return a verdict in his favor under the governing law. Accordingly, IT IS HEREBY ORDERED:

1. Defendants' Motion to File Overlength Brief (Ct.Rec. 40) and Motion for Expedited Hearing on Motion for Overlength Brief (Ct.Rec. 41) are HEREBY GRANTED.

2. Defendants' Motion for Summary Judgment (Ct.Rec. 35) is HEREBY GRANTED.

3. Plaintiff's Cross Motion for Summary Judgment (Ct. Rec. 48) is HEREBY DENIED.

4. Plaintiff's Complaint and the claims contained therein, as to monetary damages ARE HEREBY DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.