John KNOWS HIS GUN, Darryl Lewis Frost, Jason Jay Chiefstick, William Gopher, and Allen Potter, Plaintiffs,

v.

State of MONTANA; Montana Department of Corrections; Corrections Corporation of America; Crossroads Correctional Center; Warden Mike Mahoney; Warden Sam Law, Defendants.

Case No. CV–11–42–H–CCL.

United States District Court, D. Montana, Helena Division.

Feb. 29, 2012.

Anna C. Conley, Jon E. Ellingson, ACLU of Montana, Missoula, MT, Ronald F. Waterman, Gough Shanahan Johnson & Waterman, Helena, MT, for Plaintiffs.

Colleen E. Ambrose, Montana Department of Corrections, Chad E. Adams, J. Daniel Hoven, Browning Kaleczyc Berry & Hoven, Helena, MT, for Defendants.

## ORDER

CHARLES C. LOVELL, Senior District Judge.

Before the Court are Defendants' motions to dismiss this matter. The parties argued the motions at a hearing on February 23, 2012. Ronald F. Waterman of Gough, Shanahan, Johnson, & Waterman and Jon Ellingson of the American Civil Liberties Union of Montana appeared for the Plaintiffs. Chad E. Adams of Browning, Kaleczyc, Berry, & Hoven appeared for Corrections Corporation of America, Crossroads, and Warden Law (the "CCA Defendants"). Colleen Ambrose, Special Assistant Attorney General, appeared for the State of Montana and Montana Department of Corrections (the "State Defendants"). Having considered the parties' filings and arguments, the Court is now prepared to rule.

## I. Background

This case concerns the extent of a prison's obligations under the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc ("RLUIPA"), to provide opportunities for Native American inmates to participate in sweat lodge ceremonies. At the hearing on these motions, the parties agreed and acknowledged that sweat lodge ceremonies pose unique security challenges in a prison environment. Nonetheless, the Montana Department of Corrections has long provided Native American state prisoners opportunities to participate in sweat lodge ceremonies. It

is and has been the Department's policy to do so, and both the State Defendants and CCA Defendants represented that they intend to continue providing opportunities for sweat lodge ceremonies at their facilities so long as such activities do not unduly interfere with prison operation. Indeed, Defendants point out authorities holding that operation of a sweat lodge in a prison is inconsistent with the mission of a prison. See *infra.*

Plaintiffs are Native American men who are currently incarcerated by the State of Montana. In 2008 and 2009, Plaintiffs were all incarcerated at Crossroads Correctional Center ("Crossroads"), a private prison facility operated by Corrections Corporation of America ("CCA"). Crossroads is licensed by the Montana Department of Corrections, a division of the State of Montana.[1]

Plaintiffs contend that Defendants imposed a substantial burden on their participation in sweat lodge ceremonies at Crossroads Correctional Center. Specifically, they allege Defendants subjected them to strip searches and pat-down searches before and after participating in sweat lodge ceremonies; prohibited or confiscated sacred items that are essential for the ceremonies; provided inadequate and inappropriate supplies and guidance for the ceremonies; provided too small and infrequent a venue to allow all interested prisoners to participate in the ceremonies; and retaliated against them when they tried to enforce their right to religious exercise. They seek declaratory and injunctive relief as well as monetary damages.

In separate motions, the CCA Defendants (dkt. #12) and State Defendants (dkt. #18) seek to dismiss the Complaint or parts of the Complaint. Both the CCA Defendants and the State Defendants argue that Plaintiffs have not alleged any substantial burden on their religious exercise as required under RLUIPA. They also argue Plaintiffs lack standing to seek injunctive or declaratory relief or that their claims for injunctive or declaratory relief are moot. Additionally, the CCA Defendants contend RLUIPA does not permit a claim against private correctional facilities. These arguments are addressed below.

Finally, the State Defendants argue that monetary damages are not available against them because the State of Montana has not waived its sovereign immunity under RLUIPA. This argument is deemed well-taken based on *Sossamon v. Texas,* —— U.S. ——, 131 S.Ct. 1651, 1655, 179 L.Ed.2d 700 (2011), and *Holley v. California Department of Corrections,* 599 F.3d 1108, 1112 (9th Cir.2010).[2] *See* D. Mont. L.R. 7.1(d)(1)(B).

## II. Standard of Review

To hear a case, a court must have subject matter jurisdiction. Fed.R.Civ.P. 12(b)(1). Plaintiffs must have standing and their claims may not be moot. *Jacobs v. Clark Co. Sch. Dist.,* 526 F.3d 419, 425 (9th Cir.2008); *White v. Lee,* 227 F.3d 1214, 1242 (9th Cir.2000).

Additionally, a complaint should be dismissed under Rule 12(b)(6) for failure to state a claim if the plaintiffs fail to allege

---

**1.** Defendant Sam Law was formerly the warden of the facility and is named in his official capacity only. Defendant Mike Mahoney was formerly the warden of the Montana State Prison.

**2.** Plaintiffs timely responded to the CCA Defendants' motion to dismiss. Their motion to

file a late response to the State Defendants' motion to dismiss was granted in open court at the February 24, 2012 hearing. Their response to the State Defendants' motion merely incorporates their arguments to the CCA Defendants' motion; they have not responded to the State Defendants' arguments concerning sovereign immunity.

sufficient facts to "state a claim to relief that is plausible on its face." *Conservation Force v. Salazar,* 646 F.3d 1240, 1241–1242 (9th Cir.2011); *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). A court must accept all factual allegations in the complaint, construed in the light most favorable to the plaintiffs, and draw all reasonable inferences in the plaintiffs' favor. *Iqbal,* 556 U.S. 662, 129 S.Ct. at 1949–1950. However, mere "labels and conclusions" and "a formulaic recitation of the elements of a cause of action" are not sufficient, and plaintiffs' legal conclusions are not entitled to deference. *Id.*

### III. Analysis

### A. 12(b)(6)

Because the analysis narrows the issues considerably, the Court first addresses Defendants' contention that Plaintiffs failed to state a prima facie claim upon which relief can be granted. The Court concludes that Plaintiffs present a plausible claim, subject to proof, that strip searches, the prohibition of essential sacred items, and Plaintiff Knows His Gun's removal from the position of pipe carrier imposed substantial burdens on their religious exercise. Plaintiffs' other claims fail because they did not adequately allege their religious exercise was substantially burdened and because a prison is not required to pay for devotional accessories under RLUIPA. As noted above, some courts have even held that prohibiting sweat lodges altogether may be the least restrictive means to further a prison's compelling interests in maintaining a secure and safe environment. *See Fowler v. Crawford,* 534 F.3d 931 (8th Cir.2008)(cert. denied —— U.S. ——, 129 S.Ct. 1585, 173 L.Ed.2d 677 (2009)); *Hyde v. Fisher,* 146 Idaho 782, 203 P.3d 712 (Idaho App.2009). *But see Alvarez v. Hill,* 518 F.3d 1152 (9th Cir.2008)(vacating a grant of summary judgment because "genuine issues of material fact existed as to whether [prohibiting the plaintiff from participating in sweat lodge ceremonies," among other restrictions] was the least restrictive means of maintaining prison security); *Chernetsky v. Nev.,* 389 Fed.Appx. 709 (9th Cir.2010)(unpublished)(same).

RLUIPA provides:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person
>
> > (1) is in furtherance of a compelling governmental interest; and
> >
> > (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc–1(a). Once plaintiffs establish that a government practice or policy has imposed a substantial burden on their religious exercise, defendants must prove the burden both furthers a compelling governmental interest and is the least restrictive means of achieving that interest. *Warsoldier v. Woodford,* 418 F.3d 989, 994–995 (9th Cir.2005).

"Religious exercise" includes "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc–5(7)(A). RLUIPA "bar[s] inquiry into whether a particular belief or practice is 'central' to a prisoner's religion." *Greene v. Solano Co. Jail,* 513 F.3d 982, 986 (9th Cir.2008) (quoting *Cutter v. Wilkinson,* 544 U.S. 709, 725 n. 13, 125 S.Ct. 2113, 161 L.Ed.2d 1020 (2005)). Here, Plaintiffs allege that "a key component of their religious practice involves the use of a sweat lodge and the sweat lodge ceremony." Complaint, 2. Thus, a sweat lodge ceremony is a religious exercise under RLUIPA.

■ The Ninth Circuit defines a "substantial burden" as one that is " 'oppressive' to a 'significantly great' extent." *Warsoldier*, 418 F.3d at 994. That is, "a 'substantial burden' on 'religious exercise' must impose a significantly great restriction or onus upon such exercise." *Id.* at 995 (quoting *San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir.2004)). If a policy, penalty, or practice "puts significant pressure on inmates ... to abandon their religious beliefs by [modifying their behavior], it imposes a substantial burden on [the inmates'] religious practice." *Id.* at 996 (punishing an inmate for refusing to cut his hair, which would violate his religious beliefs, constituted a substantial burden); *Sherbert v. Verner*, 374 U.S. 398, 399, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963)(forcing a Seventh Day Adventist plaintiff to choose between working on Saturdays, a day of rest under her faith, and being eligible for unemployment compensation constituted a substantial burden under the First Amendment).

■ However, a practice that offends a plaintiff's religious sensibilities but does not force the plaintiff to act contrary to his or her beliefs is not a "substantial burden." *Navajo Nation v. United States Forest Service*, 535 F.3d 1058, 1063 (9th Cir.2008). Moreover, a prison is not required "to pay for an inmate's devotional accessories." *Cutter*, 544 U.S. at 720, n. 8, 125 S.Ct. 2113 (citing *Charles v. Verhagen*, 348 F.3d 601, 605 (7th Cir.2003)(overturning a prison prohibition on the possession of Islamic prayer oil, but placing the responsibility for purchasing the oil on the prisoner)).

Plaintiffs have alleged sufficient facts to pursue their claims regarding the strip searches, the alleged prohibition of essential sacred items, and one alleged retaliatory act. Otherwise, the Court agrees with Defendants that the Complaint fails to state a prima facie claim the prison's acts or omissions substantially burdened Plaintiffs' religious exercise.

■ Plaintiffs allege they were subject to en masse strip searches before and after sweat lodge ceremonies for a period of three months in 2008. These strip searches allegedly sometimes occurred in a hallway where other inmates could see them and, on a few occasions, in a gymnasium with video cameras that at least one female guard monitored. Plaintiffs claim the experience was "extremely degrading and dehumanizing" and caused the number of inmates attending sweat lodge ceremonies to decline. Thus, Plaintiffs have adequately alleged that the strip searches forced them to choose between abandoning their religious exercise or being subjected to an "extremely degrading and dehumanizing" experience.

■ Plaintiffs' allegation that the confiscation or prohibition of "smudge tobacco, antlers, herbs, and other sacred materials" is a substantial burden also inches past the *Iqbal* standard. Plaintiffs allege these objects are "essential" in order for a sweat lodge ceremony to be "meaningful and proper" and that Defendants confiscate or forbid these items. Accepting the factual allegation as true, if bare, it is sufficient at this stage in the litigation for Plaintiffs to claim they are forced to act contrary to their beliefs by holding sweat lodge ceremonies without these items. While the prison is not required to provide these items, Defendants must show that prohibiting these items is the least restrictive means to further a compelling interest and that they "actually considered and rejected the efficacy of less restrictive measure before adopting the challenged practice." *Alvarez v. Hill*, 518 F.3d 1152, 1157–1158 (9th Cir.2008)(quoting *Warsoldier*, 418 F.3d at 999).

■ Finally, Plaintiffs allege that Plaintiff Knows His Gun was relieved of his position as pipe carrier because he refused to place an "inappropriate substance" in the ceremonial medicine pipe. This allegation is sufficient to permit proof that Plaintiff Knows His Gun was forced to choose between acting in violation of his religious beliefs and being permitted to be the pipe carrier in the sweat lodge ceremonies. This penalty could constitute significant pressure on Plaintiff Knows His Gun to violate his religious beliefs by modifying his behavior. *Warsoldier,* 418 F.3d at 995. While Plaintiff Knows His Gun may pursue this claim, the other plaintiffs lack standing to do so. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)(for a plaintiff to have standing to pursue a claim, "the injury must affect the plaintiff in a personal and individual way").

■ Plaintiffs' claims concerning inadequate or inappropriate materials that are provided by the prison—including wood, tarps, and tobacco—fail because RLUIPA does not require prisons "to pay for an inmate's devotional accessories." *Cutter,* 544 U.S. at 720, n. 8, 125 S.Ct. 2113. A prison's voluntary decision to exceed RLUIPA's requirements should not subject it to further RLUIPA liability. However, should it appear that inmates are prohibited from obtaining their own adequate and appropriate materials that are essential to the sweat lodge ceremony, Defendants must demonstrate that the restriction is the least restrictive means to further a compelling interest.

■ The remaining claims fail because Plaintiffs do not support their legal conclusion that the acts or omissions impose a substantial burden on their religious exercise. *Iqbal,* 556 U.S. 662, 129 S.Ct. at 1949–1950. Plaintiffs allege they are "subject to pat down searches before and after entering the ceremonial sweat lodge

grounds," that they are provided insufficient water and toilet facilities, and that the size of the sweat lodge and frequency of ceremonies is inadequate. They also allege they are not provided a Native American spiritual advisor. However, Plaintiffs do not allege any additional facts to show these claims are " 'oppressive' to a 'significantly great' extent," *Warsoldier,* 418 F.3d at 994, or that they force Plaintiffs to act contrary to their religious beliefs, *Navajo Nation,* 535 F.3d at 1063. Plaintiffs also allege they were subject to other retaliatory acts, but they do not allege that the acts were punishment for their religious exercise or beliefs. The Court may not add factual content that was not pled, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. 662, 129 S.Ct. at 1949.

Plaintiffs have raised plausible claims that the strip searches, the prohibition of spiritual materials that are essential to a proper and meaningful ceremony, and Plaintiff Knows His Gun's removal from his position as pipe carrier are entitled to proceed at this stage as alleged substantial burdens under RLUIPA. Further factual development of these issues is warranted and required.

Insofar as tobacco is concerned, Plaintiffs claim is that Defendants furnished uncured (rather than cured) tobacco which burned their lungs and lips. The source of the tobacco may have been the mother of one of the Plaintiffs or a fund established for the benefit of all inmates. Since RLUIPA does not require Defendants to provide any such materials, and since Defendants have not prohibited use of tobacco even though the entire remainder of the prison is tobacco-free, the court regarded this claim as "looking a gift horse in the mouth."

It is the court's suggestion that the tribes be contacted by Plaintiffs to furnish all such items after approval by Defendants.

### B. 12(b)(1)

The judicial relief available to plaintiffs is limited. Plaintiffs Gopher and Potter may pursue injunctive and declaratory relief regarding the denial of essential, sacred items. Otherwise, Plaintiffs are not entitled to injunctive and declaratory relief because they lack standing or their claims are moot.

"[A] plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000). A plaintiff may have standing to seek damages for a past injury, but lack standing to seek declaratory or injunctive relief. *Mayfield v. United States*, 599 F.3d 964, 969 (9th Cir.2010).

**1. Depending on when they were transferred away from Crossroads, Plaintiffs Frost, Chief stick, and Knows his Gun either lack standing to seek injunctive and declaratory relief or their claims for injunctive and declaratory relief are moot.**

Plaintiffs Gopher and Potter are still incarcerated at Crossroads. Plaintiffs Frost, Chiefstick, and Knows His Gun have been transferred to other facilities. Frost and Chiefstick are now incarcerated at Montana State Prison. Knows His Gun is incarcerated at a lower-security facility in Anaconda. The record does not reveal whether Frost, Chiefstick, and Knows His Gun were transferred before or after this case was filed on August 5, 2011.

 If Plaintiffs Frost, Chiefstick, and Knows His Gun were transferred to other facilities prior to August 5, 2011, they do not have standing to seek injunctive and declaratory relief. To have such standing, a plaintiff must show "he has suffered or is threatened with a 'concrete and particularized' legal harm, coupled with 'a sufficient likelihood that he will again be wronged in a similar way.'" *Canatella v. State of Cal.*, 304 F.3d 843, 852 (9th Cir. 2002) (citations omitted); *see also Mayfield*, 599 F.3d at 969; *Nelsen v. King Co.*, 895 F.2d 1248, 1250–1251 (9th Cir.1990). Plaintiffs have not shown a "real and immediate threat," "a demonstrated probability," or a "very significant possibility" that Frost, Chiefstick, and Knows His Gun will be transferred back to Crossroads and again subjected to the acts complained of. *Mayfield*, 599 F.3d at 969; *Nelsen*, 895 F.2d at 1251. Plaintiffs' statement that "there is nothing that prevents [the transferred plaintiffs] from being transferred back to Shelby as easily as they were transferred out of Shelby" is conclusory and conjectural. The possibility is too speculative to support standing for injunctive or declaratory relief. *See Rodriguez v. Kincheloe*, 763 F.Supp. 463, 468 (E.D.Wash.1991).

 If Plaintiffs Frost, Chiefstick, and Knows His Gun were transferred after this suit was filed, their claims for declaratory and injunctive relief are moot. Generally, when a prisoner-plaintiff is transferred to another facility, his claims for injunctive or declaratory relief against the transferring facility become moot unless the suit is a class action. *Rhodes*, 408 F.3d at 566, n. 8; *Nelson v. Heiss*, 271 F.3d 891, 897 (9th Cir.2001); *Dilley v. Gunn*, 64 F.3d 1365, 1368 (9th Cir.1995). Contrary to Plaintiffs' argument, courts have not held that the general rule only applies to prisoners transferred to lower-security facilities. *E.g. Johnson v. Moore*, 948 F.2d 517, 519 (9th Cir.1991)(applying the general rule to a prisoner who was transferred to a federal prison from a state facility).

To avoid mootness under the general rule, Plaintiffs must demonstrate their case is "capable of repetition, yet evading review." *Dilley*, 64 F.3d at 1368. A case is "capable of repetition, yet evading review" when "1) the challenged action is too short in duration to be fully litigated prior to its expiration" and "2) there is a reasonable expectation that the injury will occur again." *Id.* (citing *Weinstein v. Bradford*, 423 U.S. 147, 149, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975)).

Plaintiffs have not shown the challenged action is too short in duration to be fully litigated prior to its expiration. Many prisoners fully litigate RLUIPA claims similar to those raised here. *See Dilley*, 64 F.3d at 1369 (holding that given the number of similar claims that are prosecuted in courts, the plaintiff could not reasonably argue the action was too short in duration to be subject to litigation). Additionally, the record does not support a finding that Defendants transferred these Plaintiffs in order to evade review. *See Jordan v. Sosa*, 654 F.3d 1012, 1037 (10th Cir.2011); *McKinnon v. Talladega Co., Ala.*, 745 F.2d 1360, 1363 (11th Cir.1984). Nor do Plaintiffs demonstrate a reasonable expectation that the transferred Plaintiffs will be transferred back to Crossroads. A mere possibility is not sufficient. *Johnson*, 948 F.2d at 519 (citing *Darring v. Kincheloe*, 783 F.2d 874 (9th Cir.1986)); *see also Jordan*, 654 F.3d at 1032 (it is not sufficient that a plaintiff *might* be returned to the transferring facility); *Preiser v. Newkirk*, 422 U.S. 395, 402–403, 95 S.Ct. 2330, 45 L.Ed.2d 272 (1975)(a subjective fear of being returned is not sufficient to avoid mootness). Accordingly, the general rule that transferred prisoners' claims for injunctive and declaratory relief are moot applies here.

Plaintiffs Frost, Chiefstick, and Knows His Gun may not seek injunctive or declaratory relief, though they may seek monetary damages for past injury against the CCA Defendants.

### 2. Plaintiffs Gopher and Potter have standing to seek injunctive and declaratory relief regarding the denial of essential, sacred items, but not regarding strip searches.

█ Because they remain at Crossroads, Plaintiffs Gopher and Potter have standing to seek injunctive and declaratory relief regarding the denial of essential spiritual materials. They do not have standing to seek injunctive or declaratory relief regarding the strip searches, though the Court agrees that en masse, videotaped strip searches might otherwise merit such relief. The strip searches alleged here terminated in October 2008, long before this action was filed, and Plaintiffs have not met their burden of showing the "defendant's allegedly wrongful behavior will likely occur or continue and the 'threatened injury [is] certainly impending.'" *Friends of the Earth, Inc.*, 528 U.S. at 190–191, 120 S.Ct. 693 (citations omitted).[3] Plaintiffs' statements that "Defendants may continue to engage in these acts and omissions," that "CCA will be free to conduct en masse strip searches … without consequences," and that "there is no assurance [strip searches] will not resume, and reports indicate that the searches could readily continue" are conclusory and speculative. Plaintiffs have not pled sufficient facts to show a sufficient likelihood that strip searches will resume.

---

**3.** Standing requires a stronger showing of imminence than mootness and places the burden of persuasion on the plaintiffs. *Friends of the Earth*, 528 U.S. at 190–191, 120 S.Ct. 693.

The exceptions available under the mootness doctrine are not available to Plaintiffs because the strip searches terminated before the action was filed. *Id.*

To summarize: Plaintiffs Frost, Chiefstick, and Knows His Gun may not pursue injunctive and declaratory relief because they lack standing or their claims are moot. Plaintiffs Gopher and Potter may pursue injunctive and declaratory relief regarding the denial of essential, sacred items, but they do not have standing to seek injunctive and declaratory relief for the strip searches, which terminated before this action was filed. All the Plaintiffs may pursue monetary damages for past injury, *Rhodes v. Robinson*, 408 F.3d 559, 566 n. 8 (2005), but not against the State Defendants, *Sossamon*, 131 S.Ct. at 1655; *Holley*, 599 F.3d at 1112.

## C. Private correctional facilities under RLUIPA

The CCA Defendants claim RLUIPA does not permit a claim against private corrections facilities. However, their interpretation of RLUIPA is too narrow.

1. **Under 42 U.S.C. § 2000cc–1(a), the CCA Defendants are "government" actors and thus may not impose a substantial burden on the religious exercise of prisoners in an institution such as Crossroads.**

Under RLUIPA, "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution...." 42 U.S.C. § 2000cc–1(a) (emphasis added); *see also Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 921–922 (9th Cir.2011). As a prison or correctional facility that provides services on behalf of the Department of Corrections and State of Montana, Crossroads qualifies as an "institution." 42 U.S.C. § 1997(1). Thus, no "government" may impose a substantial burden on the religious exercise of a prisoner at Crossroads.

RLUIPA defines "government" to include an "instrumentality" of a state government and "any other person acting under color of State law." 42 U.S.C. § 2000c–5(4)(A). The Ninth Circuit applies its interpretation of § 1983's "color of law" clause to RLUIPA. *Florer*, 639 F.3d at 922. Under § 1983, a private prison and private prison personnel can be held liable if their actions are "fairly attributable to the state." *Id.* Actions are fairly attributable to the state if "caused by the exercise of some right or privilege created by the State or ... by a person for whom the State is responsible" and "the party charged with the deprivation ... may fairly be said to be a state actor." *Id.* (internal quotations and citations omitted).

■ The CCA Defendants' actions are fairly attributable to the state. They were caused by the exercise of the state's exclusive power to incarcerate prisoners. *Rendell–Baker v. Kohn*, 457 U.S. 830, 842, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982)(imprisonment is "traditionally the exclusive prerogative" of government); *West v. Atkins*, 487 U.S. 42, 49–51, 57, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988)(a private prison's power to engage in this public function is "possessed by virtue of state law and made possible only because [it] is clothed with the authority of state law"). Prisoners must be provided reasonable opportunities to exercise religious freedom. *Florer*, 639 F.3d at 925. Here, the Montana Department of Corrections delegated this responsibility to the CCA Defendants. Thus, the CCA Defendants may fairly be said to be state or "government" actors under RLUIPA. *West*, 487 U.S. at 55–57, 108 S.Ct. 2250 (a private person "fully vested with state authority to fulfill essential aspects of the [State's] duty" is a state actor); *Florer*, 639 F.3d at 925; *Giron v. Corrections Corp. of Am.*, 14 F.Supp.2d 1245, 1249–1251 (D.N.M.1998)(a private prison serves a public function delegated to it by the state and is thus a state actor with respect

to performance of that function). Thus, under 42 U.S.C. § 2000cc–1(a), the CCA Defendants may not impose a substantial burden on the religious exercise of persons incarcerated at Crossroads.

### 2. Under 42 U.S.C. § 2000cc–1(b), Crossroads is a "program or activity that receives federal financial assistance."

RLUIPA's "scope of applicability" section limits RLUIPA liability, in relevant part, to any case in which "the substantial burden is imposed in a program or activity that receives Federal financial assistance." 42 U.S.C. § 2000cc–1(b). The CCA Defendants do not deny they receive federal financial assistance, but deny Crossroads is a "program or activity" under the statute.

■ "Program or activity" means "all the operations of any entity as described in paragraph (1) or (2) of section 2000d–4a of this title." 42 U.S.C. § 2000cc–5(6). Paragraphs (1) and (2) describe the following entities:

(1)(A) a department, agency, special purpose district, or other instrumentality of a State or of a local government; or

(B) the entity of such State or local government that distributes such assistance and each such department or agency (and each other State or local government entity) to which the assistance is extended, in the case of assistance to a State or local government;

(2)(A) a college, university, or other postsecondary institution, or a public system of higher education; or

(B) a local educational agency (as defined in section 7801 of Title 20), system of vocational education, or other school system;

42 U.S.C. § 2000d–4a(1), (2).

The CCA Defendants argue that a private prison is not an "instrumentality of the state" under RLUIPA based on other Circuits' interpretation of the term under the Americans with Disabilities Act (ADA). The ADA prohibits disability-based discrimination "with regard to a public entity's services, programs, or activities." *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir.2002). Under the ADA, a "public entity" is "any State or local government" or "any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131(1)(A)-(B). This language is similar to RLUIPA's definition of "program or activity" under paragraph (1)(A) of § 2000d–4a.

Several courts have concluded that a private prison is not an instrumentality of the state under the ADA. *E.g. Edison v. Douberly*, 604 F.3d 1307, 1310 (11th Cir.2010)(holding that a private prison does not become liable under the ADA "merely by contracting with the State to provide governmental services, essential or otherwise."); *Maringo v. Warden, Corrections Corp. of Am.*, 283 Fed.Appx. 205 (5th Cir.2008)(unpublished); *Cox v. Jackson*, 579 F.Supp.2d 831, 852 (E.D.Mich.2008)(a private medical provider that provided medical services for a state prison was not a "public entity" under the ADA). These courts have held that the words surrounding "instrumentality" ("department," "agency," and "special purpose district") indicate that a "public entity" must be a unit of government. The Ninth Circuit Court of Appeals has not addressed this question. *But see Castle v. Eurofresh, Inc.*, 734 F.Supp.2d 938, 943 (D.Ariz.2010)(holding a private company that contracted with a state prison to employ prisoners to pick tomatoes was not an "instrumentality" of the State under the ADA); *Medina v. Valdez*, 2011 WL 887553 (D.Idaho 2011)(holding a private prison is not a public entity under the ADA)(unpublished).

Even if the ADA does not apply to private prisons, RLUIPA is distinguishable because of the type of state authority at issue and the context of the term "instrumentality" within the statute. RLUIPA "shall be construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this chapter and the Constitution." 42 U.S.C. § 2000cc–3(g). RLUIPA is expressly intended to protect the religious exercise of people incarcerated in "institutions," 42 U.S.C. § 2000cc–1, and "institutions" include private prisons, 42 U.S.C. § 1997(1). The ADA, on the other hand, was not designed specifically to protect the rights of prisoners.

Additionally, the statute must be construed as a whole. As discussed above, under RLUIPA § 2000cc–1(a), "government" includes private prisons. Under § 2000cc–1(b), RLUIPA applies to an "instrumentality of a State or local government" or a "government entity ... to which [federal financial] assistance is extended." 42 U.S.C. § 2000d–4a(1). It would be nonsensical to conclude that RLUIPA prohibits private prisons from imposing substantial burdens on people incarcerated in private prisons under § 2000cc–1(a), but then determine that private prisons are not liable for RLUIPA violations in private prisons under § 2000cc–1(b). It would also be inconsistent to include private prisons under the term "government" in one paragraph, but not in the next.

The CCA Defendants also argue that Congress's decision to not include paragraph (3)(A) of 42 U.S.C. § 2000d–4a under RLUIPA's definition of "program or activity" reveals that Congress intended to exclude private prisons from RLUIPA's scope. *Id.* Paragraph (3)(A) applies to:

an entire corporation, partnership, or other private organization, or an entire sole proprietorship—

i) if assistance is extended to such corporation, partnership, private organization, or sole proprietorship as a whole or

ii) which is principally engaged in the business of providing education, health care, housing, social services, or parks and recreation ... any part of which is extended Federal financial assistance.

However, some entities, like Crossroads, fit under both paragraph (3)(A) and paragraph (1), which was included in RLUIPA. *Dean v. Corrections Corp. of Am.,* 540 F.Supp.2d 691, 693–694 (N.D.Miss.2008). Congress's decision to exclude paragraph (3)(A) from RLUIPA does not indicate an intent to exclude entities that also fit under paragraph (1).

Notably, no court has held that RLUIPA does not apply to private prisons, and the one court that has directly considered RLUIPA's "scope of applicability" section also determined that a private prison and its personnel are instrumentalities of the state under the statute. *Dean,* 540 F.Supp.2d 691. Additionally, several courts have permitted prisoners to bring RLUIPA claims against private prisons. *E.g. Abdulhaseeb v. Calbone,* 600 F.3d 1301 (10th Cir.2010)(permitting a plaintiff to proceed on RLUIPA claim against a private prison that contracts with the state of Oklahoma to hold Oklahoma prisoners); *Coronel v. Paul,* 225 Fed.Appx. 575 (9th Cir.2007)(RLUIPA claim against a private, CCA prison)(unpublished); *Pratt v. Corrections Corp. of Am.,* 124 Fed.Appx. 465, 467 (8th Cir.2005) (unpublished)(remanding case to district court with instructions to consider plaintiff's RLUIPA claim against a private CCA prison); *Alamiin v. Beasley,* 2011 WL 2636538 (W.D.Okla.2011)(unpublished)(adopted in *Alamiin v. Beasley,* 2011 WL 2649712 (W.D.Okla.2011)); *Pratt v. Corrections*

*Corp. of Am.,* 2006 WL 2375656 (D.Minn.2006)(permitting plaintiff's RLUIPA claims against CCA prison, but holding that plaintiff failed to prove a substantial burden was imposed on his religious exercise)(unpublished); *Schneider v. Donald,* 2006 WL 1344587 (S.D.Ga.2006)(permitting RLUIPA claims against private prison facility operated by CCA)(unpublished); *Gonzalez v. Corrections Corp. of Am.,* 2008 WL 5145600, *3 (N.D.Miss.2008)("The court shall assume ... that RLUIPA applies to private prisons such as Corrections Corporation of America....") (unpublished), vacated on other grounds, 344 Fed. Appx. 984 (5th Cir.2009) (unpublished); *Ziegler v. Moore,* 2005 WL 1356486 (W.D.Okla.2005) (unpublished)(would have allowed RLUIPA claim against private prison if plaintiff had raised it in his complaint and exhausted all his administrative remedies). All these courts implicitly construed "program or activity" to include private prisons.

It is also reasonable to construe Crossroads's activities as "operations of" the Montana Department of Corrections. 42 U.S.C. § 2000cc–5(6) ("program or activity" means "all the operations of" a "department ... of State government"). A private prison may not be constructed or operated without license of the Department of Corrections, Mont.Code Ann. § 53–30–603, the Department of Corrections maintains responsibility for key decisions, *see* § 53–30–608, and the State may assume control if the private prison does not comply with various laws and guidelines, § 53–30–611. Prisoners at Crossroads remain State prisoners and, like the transferred plaintiffs here, are subject to being moved from one facility to another without regard to whether it is state- or privately run. This is more than a merely contractual relationship.

Accordingly, a private prison is a "program or activity" under RLUIPA. Cross-roads operates as an instrumentality of the State and its operations are attributable to the Department of Corrections. This conclusion is supported by precedent and the fact that a contrary reading of § 2000cc–1(b) would be inconsistent with the Ninth Circuit's interpretation of § 2000cc–1(a). Plaintiffs may pursue a RLUIPA claim against the CCA Defendants.

## IV. Conclusion

Defendants are commended for striving to provide sweat lodge facilities for use by Native American inmates despite difficulties encountered in operating such facilities in a prison setting. Religion is an important aspect of all societies and has been throughout history. The sweat lodge ceremony is an important part of the religious practice and belief of many Native American tribes and its practice within the prisons is deemed to be a valuable contributing factor in rehabilitation of Native American inmates. More cooperation between the parties will go a long way toward achieving successful continuation of this ceremony in the prisons. Plaintiffs have presented a plausible claim entitling them to present proof that strip searches and the prohibition of sacred items essential to a meaningful and proper sweat lodge ceremony substantially burdened their religious exercise. Additionally, Plaintiff Knows His Gun has a plausible claim that the prison imposed a substantial burden on his religious exercise when it relieved him of his position as pipe carrier for refusing to place an inappropriate substance in the ceremonial medicine pipe. However, Plaintiffs may not pursue claims under RLUIPA regarding devotional accessories that the prison has voluntarily provided, except to the extent the prison prohibits Plaintiffs from obtaining their own, appropriate materials and subject to the constraints imposed by the prison's

**1248**

compelling interest in maintaining security and order.

Accordingly, IT IS HEREBY ORDERED that Defendants' motions to dismiss are GRANTED in part and DENIED in part. Specifically:

1. Plaintiffs Gopher and Potter may pursue their claims for injunctive and declaratory relief against the State Defendants and the CCA Defendants concerning the prohibition of sacred items essential to a meaningful and proper sweat lodge ceremony.

2. All Plaintiffs may pursue monetary damages against the CCA Defendants for any injury caused by the strip searches and the prohibition of essential, sacred items.

3. Plaintiff Knows His Gun may pursue monetary damages against the CCA Defendants for his claim that the prison imposed a substantial burden on his religious exercise when it relieved him of his position as pipe carrier.

4. All other claims are hereby DISMISSED.

IT IS FURTHER ORDERED that Plaintiffs must show cause if any they have on or before March 16, 2012 why Defendant Warden Mahoney should not be dismissed from this action.

IT IS FURTHER ORDERED that this case is referred to United States Magistrate Judge Keith Strong for the purpose of conducting a formal settlement conference to be set down by him by subsequent order. Those individuals having ultimate settlement authority shall be personally present at the conference. The Clerk is directed forthwith to notify counsel and Magistrate Judge Strong of this order.