**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DARIN D. GREENE,
        *Plaintiff-Appellant,*

v.

SOLANO COUNTY JAIL,
        *Defendant-Appellee.*

No. 06-16957

D.C. No.
CV-04-0917 MCE

OPINION

Appeal from the United States District Court
for the Eastern District of California
Morrison C. England, Jr., District Judge, Presiding

Argued and Submitted
October 16, 2007—San Francisco, California

Filed January 22, 2008

Before: Arthur L. Alarcón, David R. Thompson, and
Richard C. Tallman, Circuit Judges.

Opinion by Judge Thompson

## COUNSEL

Fred Martin, Oakland, California, for the plaintiff-appellant.

Martha M. Stringer, Sacramento, California, for the defendant-appellee, Rourk.

## OPINION

THOMPSON, Senior Circuit Judge:

Darin D. Greene ("Greene"), a former maximum security prisoner at the Claybank facility of the Solano County jail

("the Claybank jail"), appeals the district court's summary judgment as to all claims in favor of the defendant, Solano County Sheriff's Lieutenant Peggy Rourk ("Rourk").

In his civil rights action against Rourk, Greene alleged that the Claybank jail's policy of prohibiting maximum security prisoners from participating in group worship was a violation of his rights under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. §§ 2000cc *et seq.*, under the First, Eighth and Fourteenth Amendments, and under California Penal Code section 4027 ("Penal Code section 4027").[1] Rourk moved for summary judgment on portions of Greene's RLUIPA claim. The district court granted summary judgment in favor of Rourk on the entire RLUIPA claim and, *sua sponte,* granted summary judgment in favor of Rourk on Greene's 42 U.S.C. § 1983 ("section 1983") claims for alleged violations of the First, Eighth and Fourteenth Amendments, as well as for his claim under Penal Code section 4027, and dismissed the case. Greene appeals.

We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 1294. Because disputed issues of material fact exist with regard to Greene's RLUIPA claim, we reverse the district court's summary judgment in favor of Rourk on that claim and remand it to the district court for further proceedings. Because Rourk did not meet her burden on summary judgment as to Greene's section 1983 claims, or as to his Penal Code section 4027 claim, and because Greene was not given notice and an opportunity to oppose summary judgment as to those claims, we vacate the district court's summary judgment in favor of Rourk on those claims, and remand them to the district court as well.

---

[1] Greene's Penal Code section 4027 claim appears to have been raised for the first time in his opposition to Rourk's motion for summary judgment. The district court treated the claim as properly pleaded and dismissed it in the court's summary judgment in favor of Rourk.

## I. BACKGROUND

While Greene was awaiting trial on charges of terrorist threats and false imprisonment, he was housed in the maximum security area at the Claybank jail for approximately three months, from June 30, 2003 to October 9, 2003. Greene alleged, and Rourk confirmed, that numerous times while at the Claybank jail, Greene requested, and was denied, the opportunity to attend group religious worship services. Greene attempted to conduct Bible studies and morning prayer with a number of other inmates by "yelling through the corner edge of the cell door" but was ordered to stop because it was bothering other prisoners, including those who "were not able to hear the television without being disturbed." On September 12, 2003, Greene submitted a grievance, signed by 42 other inmates, requesting that group religious services be provided for maximum security inmates. Rourk denied the request, but offered to send a chaplain to visit Greene.

Greene filed a second grievance requesting that a classroom at the Claybank jail be provided at least once per week to inmates in maximum security for group religious services. This request was denied, but once again a religious visit was offered. Greene never accepted that offer. He requested, and was given, a Bible and a copy of "The Daily Bread," a religious periodical.

Greene, then acting *pro se* and *in forma pauperis*, filed a civil rights action in the United States District Court for the Northern District of California. The case was transferred to the United States District Court for the Eastern District of California, and Greene amended his complaint, naming Rourk as the sole defendant. In his amended complaint, Greene alleged that Rourk's refusal to allow group religious worship by maximum security prisoners at the Claybank jail was a violation of his rights.

Rourk moved for summary judgment. Her "Notice of Motion and Motion for Summary Judgment" stated that she was "entitled to judgment as a matter of law with respect to the claim for relief under [42 U.S.C.] § 1983 . . . ." In her Memorandum of Points and Authorities, however, Rourk focused on Greene's RLUIPA claim and omitted any discussion as to Greene's other claims. Greene filed his *pro se* response, which was dedicated almost entirely to Rourk's RLUIPA arguments.[2]

The magistrate judge recommended summary judgment be granted in favor of Rourk on Greene's RLUIPA claim. He also recommended that summary judgment be granted in favor of Rourk on Greene's section 1983 claims as well as his claim under Penal Code section 4027, even though neither party had briefed those claims. In addition, he recommended that the action be dismissed. On September 18, 2006, the district court followed the magistrate judge's recommendation and granted summary judgment in favor of Rourk and dismissed the action. This appeal followed.

## II.  DISCUSSION

### A.  The RLUIPA Claim

[1] RLUIPA provides in relevant part, that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability," unless the government establishes that the burden furthers "a compelling governmental interest," and does so by "the least restrictive means." 42 U.S.C. § 2000cc-1(a)(1)-(2). RLUIPA defines "religious exercise" to include "any exercise

---

[2]Greene made general references to the other claims, i.e., he cited the standards for various First Amendment violations, but he did not address his other claims directly, nor did he attempt to argue against summary judgment as to those claims.

of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A); *Warsoldier v. Woodford*, 418 F.3d 989, 994 (9th Cir. 2005).

The Supreme Court has recognized RLUIPA as "the latest of long-running congressional efforts to accord religious exercise heightened protection from government-imposed burdens . . . ." *Cutter v. Wilkinson*, 544 U.S. 709, 714 (2005). The statute itself reflects this intent stating, "This chapter shall be construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this chapter and the Constitution." 42 U.S.C. § 2000cc-3(g). *See also Warsoldier*, 418 F.3d at 995.

**[2]** Congress effectuated this intent by distinguishing RLUIPA from traditional First Amendment jurisprudence in at least two ways.[3] First, it expanded the reach of the protection to include any "religious exercise," including "any exercise of religion, whether or not compelled by or central to, a system of religious belief." *Cutter*, 544 U.S. at 715 (quoting 42 U.S.C. § 2000cc-5(7)(A)). In fact, RLUIPA "bars inquiry into whether a particular belief or practice is 'central' to a prisoner's religion." *Cutter*, 544 U.S. at 725 n.13; 42 U.S.C. § 2000cc-5(7)(A). Second, as opposed to the deferential rational basis standard of *Turner v. Safley*, 482 U.S. 78, 89-90 (1987), RLUIPA requires the government to meet the much

---

[3]RLUIPA's language closely tracks that of its predecessor, the Religious Freedom Restoration Act of 1993 ("RFRA"), which "prohibits [the] [g]overnment from substantially burden[ing] a person's exercise of religion even if the burden results from a rule of general applicability unless the government can demonstrate the burden (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." *Cutter*, 544 U.S. at 714-715 (internal citations and quotation marks omitted). In *City of Boerne v. Flores*, 521 U.S. 507, 515-16 (1997), the Supreme Court invalidated RFRA as applied to the states, because it "exceeded Congress' remedial powers under the Fourteenth Amendment." *Cutter*, 544 U.S. at 715 (citing *City of Boerne*, 521 U.S. at 532-36).

stricter burden of showing that the burden it imposes on religious exercise is "in furtherance of a compelling governmental interest; and is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a)(1)-(2). *See also Cutter*, 544 U.S. at 717; *Warsoldier*, 418 F.3d at 994.

### 1.  *Substantial Burden/Religious Exercise*

The district court awarded summary judgment to Rourk on Greene's RLUIPA claim because, in the district court's view, denying Greene the ability to participate in group worship would not "substantially burden his ability to exercise his religion" because he "was not required to act contrary to their [sic] religious beliefs. Moreover . . . alternative means for exercising his religion remained available to plaintiff." (internal citations omitted). We disagree with the district court's analysis and its conclusion.

In any RLUIPA claim, we must begin by identifying the "religious exercise" allegedly impinged upon. Next, we must ask whether the prison regulation at issue "substantially burdens" that religious exercise.

Rourk urges an expansive interpretation of "religious exercise." In her view, "religious exercise" is, in effect, the general practice of one's religion, rather than any particular practice within one's religion. For example, she argues that Greene's ability to engage in group worship is not, by itself, his religious exercise, but rather, is one component of his religious exercise. Applying Rourk's definition, she may, without violating RLUIPA, impose outright bans on particular aspects of an inmate's religious exercise, so long as, in the aggregate, those bans do not amount to a substantial burden.

Rourk's definition of "religious exercise" is supported neither by the plain language of RLUIPA, nor by the caselaw interpreting it. As noted above, RLUIPA specifically defines

"religious exercise" as "*any* exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A) (emphasis added). In *Cutter*, the Court noted that, "[T]he 'exercise of religion' often involves not only the belief and profession but the performance of . . . physical acts [such as] assembling with others for a worship service [or] participating in sacramental use of bread and wine." 544 U.S. at 720 (quoting *Employment Div., Dep't of Human Res. of Or. v. Smith*, 494 U.S. 872, 878-82 (1990)).

In *San Jose Christian College v. City of Morgan Hill*, 360 F.3d 1024 (9th Cir. 2004), we considered the meaning of "religious exercise" in the context of a city's zoning process. The college sued the city under RLUIPA after the city denied a zoning application which sought permission to construct "an education facility" on land zoned for use as a hospital. *Id.* at 1027. We described the "religious exercise" as "the conversion of real property for the purpose of religious exercise." *Id.* at 1034 (quoting 42 U.S.C. § 2000cc-5(7)(B)). The analysis turned not on whether the owners of the school could practice their religion even without being able to construct a facility for religious education, but whether the denial of their application burdened a particular facet of their religious practice — the conversion of their land for the purpose of religious exercise. *See also Guru Nanak Sikh Soc'y of Yuba City v. County of Sutter*, 456 F.3d 978, 981 (9th Cir. 2006) (defining the relevant religious exercise as the congregation's construction of a temple). Similarly, the religious exercise at issue in Greene's lawsuit is not his ability to practice his religion as a whole, but his ability to engage in group worship.

Rourk's reliance on *Warsoldier v. Woodford*, 418 F.3d 989 (9th Cir. 2005)*,* is misplaced. At issue in *Warsoldier* was a prison regulation restricting the hair length of its inmates to three inches. *Id.* at 992. That regulation conflicted with Warsoldier's religious belief that hair should only be cut "upon the death of a close relative." *Id.* Warsoldier sued the prison under RLUIPA. *Id.* The prison argued that the regulation did

not burden Warsoldier's religious practice, substantially or otherwise, because he was not actually forced to cut his hair. *Id.* at 992, 996. Rather, the prison allowed him a "choice" between two options: he could either 1) cut his hair, or 2) remain confined in his cell, work additional duty hours, and receive less time credits and fewer privileges, including expulsion from vocational classes, less recreation time, and less money to spend at the prison store. *Id.* We rejected this false choice, holding that "punishments to coerce a religious adherent to forgo her or his religious beliefs is an infringement on religious exercise." *Id.* at 996 (citations omitted).

*Warsoldier* is principally a case about the meaning of "substantial burden," not "religious exercise." There is no clear discussion about the meaning of the term "religious exercise" and whether forcing Warsoldier to cut his hair violates his religion as a whole or the particular aspect of his practice that prohibits an adherent from cutting his hair except upon the death of a close relative. *Warsoldier* thus provides no support for Greene.

**[3]** RLUIPA's plain language and our caselaw interpreting it compel the conclusion that the "religious exercise" at issue in Greene's lawsuit is group worship, not Christianity. Our conclusion is in harmony with every other case of which we are aware to have considered this issue. *See Cutter*, 544 U.S. at 720 (citing group worship as an example of religious exercise); *Spratt v. R.I. Dep't of Corrs.*, 482 F.3d 33, 38 (1st Cir. 2007) (relevant religious exercise was the maximum security inmate's ability to preach to other inmates); *Baranowski v. Hart*, 486 F.3d 112, 124 (5th Cir. 2007) (relevant religious exercise was keeping kosher and observing the Jewish Sabbath); *Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006) (relevant religious exercise was observing Ramadan and attending group prayer services).

**[4]** Next, we must inquire into whether the prison's prohibition on group worship constitutes a "substantial burden" on

this religious exercise. We have little difficulty in concluding that an outright ban on a particular religious exercise is a substantial burden on that religious exercise. *See Murphy v. Mo. Dep't of Corrs.*, 372 F.3d 979, 988 (8th Cir. 2004) (concluding that a ban on "communal worship" substantially burdened inmate's religious exercise, thereby precluding summary judgment); *Meyer v. Teslik*, 411 F. Supp. 2d 983, 989 (W.D. Wis. 2006) (holding that ban on group worship substantially burdened inmate's religious exercise and noting that, "It is difficult to imagine a burden more substantial than banning an individual from engaging in a specific religious practice").

**[5]** We conclude that the Claybank jail's policy of prohibiting Greene, a maximum security prisoner, from attending group religious worship services substantially burdened his ability to exercise his religion.

### 2.   *Compelling Governmental Interest*

Once a plaintiff makes the requisite showing under RLUIPA of a substantial burden on the exercise of his religion, it becomes the defendant's responsibility to establish that the burden furthers "a compelling governmental interest," and does so by "the least restrictive means." 42 U.S.C. § 2000cc-1(a); 42 U.S.C. § 2000cc-2(b); *Warsoldier*, 418 F.3d at 995.

Rourk asserted, and the district court agreed, that the policy of precluding maximum security prisoners such as Greene from participating in group worship served the compelling governmental interest of maintaining prison security. Prison security is a compelling governmental interest, *Cutter*, 544 U.S. at 725 n.13, and the district court was correct in finding there was no dispute as to this issue. The question is whether precluding group worship by maximum security prisoners at the Claybank jail is the least restrictive means of furthering this compelling governmental interest.

### 3. *Least Restrictive Means*

Because disputed issues of material fact exist as to whether the policy of prohibiting group worship by maximum security prisoners is the least restrictive means of maintaining security at the Claybank jail, the district court erred in granting summary judgment in favor of Rourk on Greene's RLUIPA claim.

[6] Rourk argued the policy was the least restrictive means of achieving jail security for essentially two reasons. First, she contended that the maximum security area at the Claybank jail does not have an available classroom because there was only one classroom in the facility, and it was located in the minimum security area. Second, she argued that "for reasons of prison security, inmates housed in maximum security could not meet in a group setting." And further that, "[j]ail security would be severely threatened if the potentially violent offenders in maximum security were not very closely supervised and if groups of maximum security prisoners were allowed to congregate outside their modules." Rourk further stated that Greene

> . . . has no idea of the intricacies of operating a prison . . . [h]e cannot seem to see the difference between inmates who are housed in minimum or medium security and those housed in maximum security areas . . . [he] sees an empty space [and] thinks he should be allowed to occupy it . . . [t]he inmates, however, are not allowed to run the jails, and those who are responsible for administering prisons must be accorded deference . . .

[7] These assertions were contested by Greene. He pointed out that, "[t]he law library is down the hall from maximum security . . . [and] was available to inmates in maximum for group worship." He explained that he "and other maximum security inmates were escorted to the law library classroom in groups by the one custody staff assigned to Maxi. II at least

once a week, being there for up to two hours. When taken to the library, we were left unattended in group settings without incidents."

While Rourk is correct that prison administrators are to be accorded deference with regard to prison security, *Cutter*, 544 U.S. at 723, 725, she still must show that she "actually considered and rejected the efficacy of less restrictive measures before adopting the challenged practice." *Warsoldier*, 418 F.3d at 999 ("[E]ven outside the context of a minimum security facility, [the defendant] cannot meet its burden to prove least restrictive means unless it demonstrates that it has actually considered and rejected the efficacy of less restrictive measures before adopting the challenged practice.") (citing *United States v. Playboy Entm't Group, Inc.*, 529 U.S. 803, 824 (2000) (finding, in the context of a First Amendment challenge to speech restrictions, that "[a] court should not assume a plausible, less restrictive alternative would be ineffective")).

**[8]** There is a genuine issue of material fact as to whether a total ban on group religious worship by maximum security prisoners at the Claybank jail is the least restrictive means of maintaining jail security. Summary judgment on this issue in favor of Rourk was inappropriate.

Nothing in our opinion should cast doubt on the fact that prison officials may, under certain circumstances, substantially burden a prisoner's ability to engage in religious exercise. But in light of RLUIPA, no longer can prison officials justify restrictions on religious exercise by simply citing to the need to maintain order and security in a prison. RLUIPA requires more. Prison officials must show that they "actually considered and rejected the efficacy of less restrictive measures before adopting the challenged practice." *Warsoldier*, 418 F.3d at 999. If prison officials meet that standard, the prison regulation passes muster under RLUIPA, regardless of the burden it imposes on religious exercise.

B. *Sua Sponte* Summary Judgment on Greene's Section
   1983 and Penal Code Section 4027 Claims

**[9]** Greene alleged that the prohibition on group worship also violated his rights under the First, Eighth, and Fourteenth Amendments. The magistrate judge entered an order explaining that Greene's amended complaint "states a cognizable claim for relief pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1915A(b)." Rourk then moved for summary judgment. Rourk's Notice of Motion for Summary Judgment stated that she was "entitled to summary judgment as a matter of law with respect to the claim for relief under § 1983 . . . ." However, her Memorandum of Points and Authorities was dedicated solely to arguing the issues of "compelling interest"/ "least restrictive means" under RLUIPA. Because Rourk did not "either produce evidence negating an essential element of" Greene's section 1983 and Penal Code section 4027 claims, or show that Greene did "not have enough evidence of an essential element to carry [his] ultimate burden of persuasion at trial," *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000), summary judgment in Rourk's favor was not appropriate as to those claims.

Moreover, the district court's summary judgment dismissing Greene's section 1983 and Penal Code section 4027 claims was granted *sua sponte*. *Sua sponte* grants of summary judgment are only appropriate if the losing party has "reasonable notice that the sufficiency of his or her claim will be in issue." *Buckingham v. United States*, 998 F.2d 735, 742 (9th Cir. 1993). *See also Evans v. United Airlines, Inc.*, 986 F.2d 942, 945 (5th Cir. 1993) (where the defendant's motion for summary judgment did not address many of the plaintiffs' claims, the plaintiffs were not on notice as to those claims).

Greene's response to Rourk's Motion for Summary Judgment laid out the standard for summary judgment and went on to respond to Rourk's Statement of Disputed Facts, address-

ing those facts that he believed were in dispute. He set forth the legal standard under the First Amendment. He next set forth the standard under RLUIPA. Then he went on to apply the standard under RLUIPA with regard to "compelling interest"/"least restrictive means" to the facts of his case and to Rourk's assertions. Though Greene made opaque mention of his other claims, such mention was incidental and not a focal point of his response.

Greene was a *pro se* plaintiff. As such, he cannot be expected to anticipate and prospectively oppose arguments that an opposing defendant does not make. *See Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998). Greene did not have a "full and fair opportunity to ventilate the issues" prior to the district court's summary judgment on these claims. *Cool Fuel, Inc. v. Connett*, 685 F.2d 309, 312 (9th Cir. 1982).

[10] Because Rourk did not meet her burden as the moving party on summary judgment as to the section 1983 and Penal Code section 4027 claims, and because Greene did not have notice and an opportunity to oppose summary judgment on those claims, summary judgment on them was inappropriate.

## CONCLUSION

We REVERSE the district court's summary judgment in favor of Rourk on Greene's RLUIPA claim and REMAND that claim to the district court for further proceedings. We also VACATE the district court's summary judgment in favor of Rourk on Greene's claims under 42 U.S.C. § 1983 and Penal Code section 4027, and REMAND those claims as well to the district court for further proceedings.

REVERSED in part, VACATED in part, and REMANDED.