**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

LAUSTEVEION DELANO JOHNSON,
*Plaintiff-Appellee*,

v.

RENEE BAKER, Warden,
*Defendant-Appellant*,

and

LUIS LOPEZ, Kitchen Supervisor; J.
TAYLOR; KURNER, Sgt. at ESP;
ANDREW SILVERSTEIN; ISIDRO BACA,
Warden; MICHAEL KOEHN, Doctor;
JULIO CALDERON, Chaplain; DWIGHT
NEVEN, Warden at HDSP; BRANDON
LAWRENCE; JAMES COX, Director of
NDOC; NISSEL YOUNG; BRIAN
WILLIAMS, Warden; J.
YOUNGBLOOD; JO GENTRY, Warden,
*Defendants.*

No. 20-17202

D.C. No.
2:15-cv-00884-
JAD-NJK

OPINION

Appeal from the United States District Court
for the District of Nevada
Jennifer A. Dorsey, District Judge, Presiding

Argued and Submitted October 20, 2021
San Francisco, California

Filed January 26, 2022

Before:  Bridget S. Bade and Patrick J. Bumatay, Circuit
Judges, and Richard M. Berman,* District Judge.

Opinion by Judge Bumatay

**SUMMARY****

**Prisoner Civil Rights**

In an action brought pursuant to the Religious Land Use
and Institutionalized Persons Act by a Nevada state prisoner,
the panel affirmed the district court's injunction, entered
following a bench trial, requiring Nevada prison officials to
allow plaintiff to possess no more than a half ounce of
scented oil in his cell for personal use with his prayers.

Noting that the Religious Land Use and Institutionalized
Persons Act ("RLUIPA") provides expansive protection for
religious liberty, the panel agreed with the district court that
Nevada's regulation banning personal possession of scented
oil substantially burdened plaintiff's religious exercise and

---

* The Honorable Richard M. Berman, United States District Judge
for the Southern District of New York, sitting by designation.

** This summary constitutes no part of the opinion of the court.  It
has been prepared by court staff for the convenience of the reader.

that the State failed to show that the regulation was the least restrictive means of serving its compelling interest.

The panel stated by the plain language of RLUIPA, it was forbidden from evaluating the centrality of a religious practice or belief. *See* 42 U.S.C. § 2000cc-5(7)(A). Instead, the panel could only scrutinize the sincerity of the prisoner's beliefs. Because RLUIPA's plain text and this court's precedent prohibits courts from peering into the centrality of a religious practice or whether a particular practice was necessary to the religion, the panel rejected defendants' assertions that scented oil was not "really that important" to plaintiff's worship practice or that plaintiff needed to point to textual support or oral history proving that the Prophet Mohammad used scented oil in prayer.

The panel noted that the prison regulation at issue prohibited plaintiff from using scented oil for prayer—the way plaintiff believes the Prophet Muhammed prayed—for 34 out of his 35 prayers per week. The panel concluded that the regulation constituted a "substantial burden" on plaintiff's particular religious exercise and that in advancing a general interest in prison security and minimizing contraband, Nevada failed to meet the exceptionally demanding" burden of proving that its ban was the least restrictive means of furthering its security interest.

**COUNSEL**

Gregory L. Zunino (argued), Deputy Solicitor General; Frank A. Toddre II, Senior Deputy Attorney General; D. Randall Gilmer, Chief Deputy Attorney General; Aaron D. Ford, Attorney General; Office of the Attorney General, Las Vegas, Nevada; for Defendants-Appellants.

Edward Williams (argued) and Tiffany R. Wright, Howard University School of Law, Human and Civil Rights Clinic, Washington, D.C.; Samuel Weiss, Rights Behind Bars, Washington, D.C.; for Plaintiff-Appellee.

Gordon D. Todd, Mackenzi J.S. Ehrett, and Cody l. Reaves, Sidley Austin LLP, Washington, D.C.; Christopher Pagliarella, Yale Law School Free Exercise Clinic, Washington, D.C.; for Amicus Curiae Muslim Public Affairs Council.

**OPINION**

BUMATAY, Circuit Judge:

As a devout Muslim, Lausteveion Johnson must purify himself and anoint himself with scented oil before each of his five daily prayers. But as a prisoner within the Nevada Department of Corrections, he is prevented from doing so by a regulation that prohibits him from possessing scented oil in his cell. While denying Johnson the ability to pray in the manner of his faith, Nevada insists that its regulation is acceptable because Johnson may still pray with scented oil for *one* prayer each week and use unscented baby oil for the rest of his prayers. But that's not what Johnson's faith or the law requires.

Johnson sued under the Religious Land Use and Institutionalized Persons Act ("RLUIPA") to have his religious liberty restored. And the district court did so. It found that Nevada failed to show that depriving Johnson of scented oil was the least restrictive means of furthering its interest in institutional security. Now on appeal, Nevada invites us to question whether the use of scented oil is really necessary to Johnson's faith. But that request is foreclosed by RLUIPA's text and extensive caselaw. We thus agree that Nevada has failed to justify its burden on Johnson's religious liberty and affirm.

## I.

Since 2008, Lausteveion Johnson has practiced Islam and followed the dictates of the Prophet Muhammed as well as the religious principles of the Quran, which he believes provides the exact words of God. One of those principles is prayer five times a day. Before prayer, Muslims must first purify themselves by washing their hands, face, and feet and clothe themselves in clean garments. Following the practice of the Prophet Muhammad, Muslims must also anoint themselves with scented oil before each of the five prayers. A drop of the scented oil must be dabbed on the wrists and on the neck or hair. But not just any oil can be used. The oil must be scented, purified, and blessed by an Imam. Johnson believes unscented oil has "no Islamic significance." And the State does not dispute Johnson's sincerity.

Johnson has been in the custody of the Nevada Department of Corrections since 2003. The Nevada Department of Corrections' Administrative Regulations govern the accommodation of the religious practices of the State's prisoners. In particular, Administrative Regulation 810.2 governs the use of religious items, including scented oil. The 2017 version of the regulation allows inmates to

purchase up to six one-ounce bottles of scented oil for "group use" during religious services, but the oil must be kept in the chapel.[1] Johnson thus cannot possess the scented prayer oil in his cell, meaning he cannot use the oil for the bulk of his prayers. Rather, he can only use scented oil once a week during group prayer service at the chapel. As a result, Nevada's regulation leaves Johnson without access to prayer oil for 34 of his 35 prayers each week. But it's undisputed that Nevada provides its prisoners with ample access to similar items such as 14-ounce bottles of unscented baby oil, Irish Spring soap, Tide laundry detergent, Bounce dryer sheets, cocoa butter lotion, various scents of deodorant, and cosmetics like nail polish. Unlike scented prayer oil, these items may be kept in prisoners' cells.

Johnson sued various Nevada Department of Corrections officials, alleging, among other claims, violation of RLUIPA. Johnson argued that Administrative Regulation 810.2 substantially burdened his religious exercise and that he should be permitted to possess scented oil in his cell for personal use during his daily prayers. After a bench trial, the district court agreed. The district court ruled that the regulation operated as an "outright ban" on Johnson's religious practice and that the prohibition against Johnson keeping a small amount of scented oil in his cell was not the least restrictive means of achieving the State's interest in institutional security. The district court then entered an injunction requiring Nevada prison officials to allow Johnson to possess no more than a half ounce of scented oil in his cell for personal use with his prayers. The district court ordered Johnson's supply to be replenished at the

---

[1] A 2013 version of the regulation completely prohibited the use of any scented oil for religious purposes and only permitted prisoners to use unscented baby oil for group prayer.

weekly Muslim group prayer service from a bottle kept by the chaplain.

Nevada appeals. We review findings of fact for clear error and conclusions of law de novo. *Lentini v. Cal. Ctr. for the Arts, Escondido*, 370 F.3d 837, 843 (9th Cir. 2004).

## II.

RLUIPA guarantees an "expansive protection for religious liberty." *Holt v. Hobbs*, 574 U.S. 352, 358 (2015). It commands that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution" unless the government can show that the burden "is in furtherance of a compelling governmental interest" and "is the least restrictive means of furthering" that interest. 42 U.S.C. § 2000cc-1(a). In interpreting RLUIPA, we must construe its text "in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this chapter and the Constitution." *Id.* § 2000cc-3(g).

The prisoner has the "initial burden" of showing that a prison's "policy implicates his religious exercise" and that the "policy substantially burden[s] that exercise of religion." *Holt*, 574 U.S. at 360–61. If that's met, the burden then shifts to the government to show that the policy was "in furtherance of a compelling governmental interest" and "the least restrictive means of furthering that compelling governmental interest." *Id.* at 362 (simplified).

Given that Nevada's prison regulation prevents Johnson from praying according to his faith, it has substantially burdened his religious exercise. Nevada also fails to show

that its regulation is the least restrictive means of furthering its compelling interest.  For these reasons, we affirm.[2]

## A.

In evaluating Johnson's RLUIPA claim, we must first determine whether the Nevada regulation governing the use of scented oil "implicates his religious exercise." *Holt*, 574 U.S. at 360.  What constitutes "religious exercise" under RLUIPA is not subject to exacting review.  Congress defines religious exercise "capaciously" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." *Id.* at 358 (quoting 42 U.S.C. § 2000cc-5(7)(A)).

---

[2] To begin, Nevada argues that Johnson's claim for injunctive relief is moot since he was transferred to a different Nevada prison during the litigation.  That's not so.  A case is moot only if it is "impossible" for this court to grant relief. *Rocky Mountain Farmers Union v. Corey*, 913 F.3d 940, 949 (9th Cir. 2019) (simplified).  While the transfer of an inmate to a new prison will usually moot a challenge to conditions at a "particular facility," *Nelson v. Heiss*, 271 F.3d 891, 897 (9th Cir. 2001), that is not true when the inmate attacks a "system wide" policy. *Walker v. Beard*, 789 F.3d 1125, 1132 (9th Cir. 2015).  Here, Administrative Regulation 810.2 prohibits the personal possession of scented oil for prayers at all Nevada prisons.  Because this court may still grant relief, Johnson's claim for injunctive relief is not moot.

Johnson's case is also not moot because the Department of Corrections amended Administrative Regulation 810.2 during the litigation.  The core of Johnson's RLUIPA complaint has always been that he needs access to scented oil for each of his five daily prayers, and the 2017 amendment did not address that concern.  Further, any error by the district court in allowing Johnson to proceed without amending his complaint is forfeited because Nevada failed to raise that issue before the district court. *See Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006).

By the plain language of RLUIPA, we are forbidden from evaluating the centrality of a religious practice or belief. *See* 42 U.S.C. § 2000cc-5(7)(A). Instead, we may only scrutinize the sincerity of the prisoner's beliefs. *See Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005) ("Although RLUIPA bars inquiry into whether a particular belief or practice is 'central' to a prisoner's religion, . . . the Act does not preclude inquiry into the sincerity of a prisoner's professed religiosity."). So it makes no difference that a prisoner may still practice his "religion as a whole" under the State's restrictions, *Greene v. Solano Cnty. Jail*, 513 F.3d 982, 987 (9th Cir. 2008), or that not every believer of the same faith practices in the same way, *Holt*, 574 U.S. at 362–63.

Rather, what matters is whether a regulation "burden[s] a particular facet of [the prisoner's] religious practice." *Greene*, 513 F.3d at 987. For example, in *Holt*, the Supreme Court held that RLUIPA protected the religious practice of growing a half-inch beard, "which [the prisoner] believe[d] [was] a dictate of his religious faith." 574 U.S. at 361. And it was irrelevant that the particular religious belief in growing a beard was not shared by all practicing Muslims or that the practice was not compelled by the faith. *Id.* at 361–62. Thus, this initial RLUIPA step requires a narrow inquiry focused on (1) the specific religious practice at issue and (2) the specific practitioner.

The district court correctly identified that the religious exercise at issue was Johnson's worship practice of anointing himself with scented oil before each prayer and properly concluded that Nevada's regulation against the personal possession of scented oil implicated that practice. And the State does not challenge the sincerity of Johnson's belief that he must pray in this way.

On appeal, Nevada grossly misses the mark in arguing that its regulation doesn't implicate Johnson's "religious exercise." Nevada contends that the use of scented oil for Johnson's prayers is not *really that important* to his worship practice—it's just a mere preference. What's more, Nevada appears to argue that Johnson must point to textual support or oral history proving that the Prophet Mohammad used scented oil in prayer. These arguments flout RLUIPA's plain text and our precedent, which prohibits courts from peering into the centrality of a religious practice or whether a particular practice is necessary to the religion. 42 U.S.C. § 2000cc-5(7)(A). As *Holt* explains, it makes no difference that a religious belief is "idiosyncratic" or not "shared by all of the members of a religious sect." 574 U.S. at 362 (simplified). If the belief is sincerely held, it falls within the protection of RLUIPA. We thus conclude that Johnson has met his burden of proving that the Nevada regulation implicates his religious exercise.

## B.

Next, we consider whether Nevada's regulation substantially burdens Johnson's religious exercise. Our precedent shows that we do not take a narrow view of what constitutes a "substantial burden." We've held it requires a "significantly great restriction or onus upon [religious] exercise." *Warsoldier v. Woodford*, 418 F.3d 989, 995 (9th Cir. 2005) (quoting *San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004)). Of course, when a regulation "outright ban[s]" religious exercise, it amounts to a substantial burden. *Greene*, 513 F.3d at 988. But we have also said that lesser restrictions may suffice. For example, we have recognized that government action that threatens "punishment[] to coerce a religious adherent to forgo her or his religious

beliefs," *Warsoldier*, 418 F.3d. at 996, or causes "substantial delay, uncertainty, and expense" to worship, *Int'l Church of Foursquare Gospel v. City of San Leandro*, 673 F.3d 1059, 1068 (9th Cir. 2011) (simplified), may amount to a substantial burden. And importantly, the "availability of alternative means of practicing religion" has no bearing on the "substantial burden" inquiry. *Holt*, 574 U.S. at 361.

Nevada's regulation prohibits Johnson from personally possessing scented oil. He may only access such oil during group religious services—held only on one day a week at one time. So the regulation prohibits Johnson from using scented oil for prayer—the way Johnson believes the Prophet Muhammed prayed—for 34 out of his 35 prayers per week.

Such a regulation constitutes a "substantial burden" on Johnson's particular religious exercise. The regulation limits his use of scented oil during prayer to a paltry one out of 35 prayers per week. Compare that burden to other necessities. No one would deny that depriving Johnson of 34 of out 35 adequate meals would be a substantial burden. Or that providing Johnson with sufficient clothing only once every 35 days would be a substantial burden. Nevada's regulation thus amounts to a "significantly great restriction or onus upon [religious] exercise." *Warsoldier*, 418 F.3d at 995 (simplified).

And once again, Nevada is severely misguided in its claim that Administrative Regulation 810.2 is not a substantial burden because Johnson may use scented oil once a week at group prayer and unscented oil for his other prayers. Precedent forecloses this argument. In *Holt*, the Court rejected the argument that the prison grooming policy did not substantially burden a prisoner's particular religious exercise because "he had been provided a prayer rug and a

list of distributors of Islamic material, he was allowed to correspond with a religious advisor, and was allowed to maintain the required diet and observe religious holidays." 574 U.S. at 361 (simplified). The Court explained that in evaluating a substantial burden under RLUIPA, we must look at the regulation's effect on the specific religious practice at issue—in that case, the growing of a half-inch beard—"not whether the RLUIPA claimant is able to engage in other forms of religious exercise." *Id.* at 361–62. So whether Johnson has access to unscented oil is immaterial when his faith requires scented oil. *See Greene*, 513 F.3d at 987.

As Nevada's regulation prohibits Johnson from complying with his religious beliefs for 34 out of 35 prayers, we are satisfied that the regulation is a substantial burden on his religious exercise.

## C.

Since Johnson met his burden of showing that the prison regulation substantially burdened his religious exercise, the burden properly shifted to Nevada to show that its regulation is (1) in furtherance of a compelling governmental interest and (2) the least restrictive means of serving that interest. 42 U.S.C. § 2000cc-1(a); *Holt*, 574 U.S. at 362. We address these two questions together. *See, e.g.*, *Holt*, 574 U.S. at 362–67.

Nevada advanced a general interest in prison security to justify its ban on the personal possession of scented oil. On appeal, Nevada focused on the ban's effect on minimizing

contraband.[3] Nevada argues that prison officials depend on their sense of smell to detect contraband and scented oil could be used to cover the smell of contraband, such as drugs. Scented oil also presents a safety issue, according to prison officials, because it could mask the smell of a fire.

We have no doubt that "prison security is a compelling state interest." *Cutter*, 544 U.S. at 725 n.13; *see also Holt*, 574 U.S. at 363 (holding that staunching the flow of contraband is a compelling governmental interest). But we don't grant "unquestioning deference" to the government's claim of a general security interest. *Holt*, 574 U.S. at 364. Indeed, in the RLUIPA context, prison officials cannot "justify restrictions on religious exercise by simply citing to the need to maintain order and security in a prison." *Greene*, 513 F.3d at 989–90. Instead, "prison officials *must* set forth detailed evidence, tailored to the situation before the court, that identifies the failings in the alternatives advanced by the prisoner." *Warsoldier*, 418 F.3d at 1000 (simplified). To this end, RLUIPA requires a "more focused" inquiry that looks at the challenged regulation's application to the "the particular claimant whose sincere exercise of religion is being substantially burdened." *Holt*, 574 U.S. at 363 (simplified). Thus, the government may not satisfy the compelling interest test by pointing to a general interest—it must show the "marginal interest in enforcing" the ban on

---

[3] Before the district court, Nevada asserted other prison security interests, such as maintaining good hygiene by preventing inmates from covering their body odor with the scented oil. It also raised the concern that oil is slippery, can be used as a weapon, and can be traded. While Nevada noted these interests in the background section of its opening brief, it made no arguments in support of the interests, and we consider them abandoned. *See Rattlesnake Coal. v. EPA*, 509 F.3d 1095, 1100 (9th Cir. 2007) ("Issues raised in an opening brief but not supported by argument are considered abandoned.").

the personal possession of scented oil against Johnson.  *Id.*
(simplified).   The State's burden here is "exceptionally
demanding."  *Id.* at 364 (simplified).

We agree with the district court that Nevada failed to
meet its burden.   Nevada has not shown that banning
Johnson from possessing scented oil in his cell, even a small
half-ounce bottle as an accommodation, was the least
restrictive means of serving its interest.  As the district court
found, although government witnesses testified that they
believed the scent of the prayer oil was powerful enough to
cover the smell of contraband, those witnesses did not
present "detailed evidence" on the quantity needed to do so.
*Warsoldier*, 418 F.3d at 1000.   Given the lack of such
evidence and Johnson's testimony regarding his personal
experience using prayer oil, it was also not clearly erroneous
for the district court to credit Johnson's testimony that
"drench[ing]" a cell with scented oil would be necessary to
cover the smell of any contraband.  And the district court's
finding that any security risk could be minimized by prison
officials familiarizing themselves with the smell of a cell
drenched in scented oil was not implausible or unsupported
by the record.

Further, Nevada's prison regulations as to other scented
products undermines the State's argument.  It's undisputed
that Nevada prisoners may keep many scented products in
their cells, such as Irish Spring soap, Tide detergent, Bounce
dryer sheets, cocoa butter lotion, deodorants, and cosmetics
like nail polish.   And in the district court's view,
unchallenged on appeal, these products all have "strong
scents" and are available to purchase in larger quantities than
the half-ounce of scented oil sought by Johnson.  Nevada's
underinclusive policing of scented products is thus a sure
sign that it is not using the least restrictive means of

furthering its security interest. Indeed, when a prison's "proffered objectives are not pursued with respect to analogous nonreligious conduct," it "suggests that those interests could be achieved by narrower ordinances that burdened religion to a far lesser degree." *Holt*, 574 U.S. at 368 (simplified).

Nevada thus failed to meet its "exceptionally demanding" burden of proving that its ban was the least restrictive means of furthering its security interest. *Id.* at 364. The district court concluded that allowing Johnson to personally possess a half-ounce of scented oil in his cell for use in prayer, administered by the institution's chaplain during the weekly group prayer, could mitigate many of the prison's security concerns. On this record, we agree.[4]

## III.

RLUIPA provides "expansive protection for religious liberty" in prisons. *Holt*, 574 U.S. at 358. Because we agree that Nevada's regulation banning personal possession of scented oil substantially burdened Johnson's religious

---

[4] Nevada also asserts two procedural grievances, which we reject. First, it argues that the district court allowed a "trial by ambush" by permitting Johnson to present less restrictive alternatives to the amended Administrative Regulation 810.2 for the first time at trial. We disagree. It was clear from the beginning of this litigation that Johnson sought personal possession of scented oil for prayer. So Nevada's burden to show that its regulation was the least restrictive means remained constant throughout the case. Second, Nevada argues that the district court erred in considering evidence of security and operating procedures at Johnson's pretrial prison facility when his complaint referenced a different prison and Johnson was transferred to yet another prison at the time of trial. We again disagree. Nevada fails to recognize that *it* had the burden of showing that its system-wide ban on possession of scented oil was the least restrictive means of serving its compelling interest.

exercise and the State failed to show that the regulation was the least restrictive means of serving its compelling interest, we affirm.

**AFFIRMED**.