NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

JUL 18 2025

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

MAKUEEYAPEE D. WHITFORD,

Plaintiff - Appellant,

v.

JIM SALMONSEN; C. JOHNSON; BRIAN GOOTKIN,

Defendants - Appellees.

No. 24-3177

D.C. No.
6:22-cv-00070-BMM-JTJ

MEMORANDUM*

MAKUEEYAPEE D. WHITFORD,

Plaintiff - Appellee,

v.

JIM SALMONSEN;  BRIAN GOOTKIN,

Defendants - Appellants,

and

C. JOHNSON,

Defendant.

No. 24-3340

D.C. No.
6:22-cv-00070-BMM-JTJ

Appeal from the United States District Court
for the District of Montana

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Brian M. Morris, Chief District Judge, Presiding

Argued and Submitted June 11, 2025
Portland, Oregon

Before: SCHROEDER, TALLMAN, and OWENS, Circuit Judges

Plaintiff Makueeyapee D. Whitford, a former inmate at Montana State Prison (MSP),[1] sues various officials at the Montana Department of Corrections (MDOC) for violating his rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). *See* 42 U.S.C. § 2000cc-1(a) *et seq.* Whitford is a member of the Blackfeet Nation and practices the religion of his tribe. Whitford alleges that MSP's policy requiring inmates to have six months of infraction-free conduct ("Clear Conduct Policy") to participate in various activities illegally burdens his Native American religious practices in violation of RLUIPA.

The district court granted summary judgment for Defendants, finding that the Clear Conduct Policy did not substantially burden Whitford's Native American religious practices, or where it did, that the burden was justified by a compelling governmental interest in maintaining prison security as applied to Whitford. As the

---

[1] While this appeal was pending, Whitford was transferred to the custody of the New Jersey Department of Corrections pursuant to the terms of the states' Interstate Corrections Compact (ICC) due to Whitford's continuing behavior issues. *See* Dkt. 48. Whitford's claims for injunctive relief under RLUIPA are not moot because under the terms of the ICC, Whitford remains subject to the jurisdiction of Montana, may be returned to Montana at any time, and must be returned before his release. *See Johnson v. Moore*, 948 F.2d 517, 519–20, 522 (9th Cir. 1991) (per curium); Mont. Code Ann. § 46-19-401(IV)(c), (g) (2023).

parties are familiar with the facts, we do not recount them here. "We review a district court's rulings on summary judgment motions *de novo*." *Donell v. Kowell*, 533 F.3d 762, 769 (9th Cir. 2008). We have jurisdiction, and we affirm. *See* 28 U.S.C. § 1291.

1. The Clear Conduct Policy does not substantially burden Whitford's ability to be elected pipe carrier. Under RLUIPA, Whitford bears the burden of making a *prima facie* showing that the Clear Conduct Policy constitutes a substantial burden on the exercise of his religious beliefs. *Warsoldier v. Woodford*, 418 F.3d 989, 994 (9th Cir. 2005). Whitford claims that the Clear Conduct Policy violates RLUIPA by making him ineligible to be elected as a community pipe carrier. However, he points to no evidence that the Clear Conduct Policy applies to his eligibility to be elected pipe carrier by his fellow native religious practitioners. Whitford's unsupported assertion that he believes an unwritten rule makes him ineligible to be elected pipe carrier is not enough to make out a *prima facie* case of substantial burden. *See id.* at 995 ("a 'substantial burden' on 'religious exercise' must impose a significantly great restriction or onus upon such exercise" (quoting *San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004)).

2. The application of the Clear Conduct Policy to Whitford's ability to be chosen as a sweat lodge set-up crew member is justified by a compelling governmental interest in prison security served by the least restrictive means. The

Clear Conduct Policy completely bars Whitford from being eligible to be chosen as a sweat lodge set-up crew member for a six-month period, so Whitford makes a *prima facie* showing of substantial burden. *See Greene v. Solano Cnty. Jail*, 513 F.3d 982, 988 (9th Cir. 2008) ("We have little difficulty in concluding that an outright ban on a particular religious exercise is a substantial burden on that religious exercise.").

Once Whitford makes a prima facie showing that the Clear Conduct Policy constitutes a substantial burden on his exercise of religion, the burden shifts to Defendants to establish that the Policy furthers a compelling governmental interest and is the least restrictive means of achieving that interest. *See Johnson v. Baker*, 23 F.4th 1209, 1214 (9th Cir. 2022). "[P]rison security is a compelling state interest" in the RLUIPA analysis. *Id.* at 1217 (quoting *Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005)). We do not "grant 'unquestioning deference' to the government's claim of a general security interest" justifying the challenged policy. *Id.* (quoting *Holt v. Hobbs*, 574 U.S. 352, 364 (2015)). Rather, "RLUIPA . . . contemplates a more focused inquiry and requires the Government to demonstrate that the compelling interest test is satisfied through application of the challenged law to the person—the particular claimant whose sincere exercise of religion is being substantially burdened." *Holt*, 574 U.S. at 362–63 (internal quotation marks and citation omitted). Defendants make that showing here.

Defendants satisfied their burden by submitting affidavits to the district court explaining that out-of-cell activities, like sweat lodge set-up, are often used by inmates to "pass contraband and unauthorized communications." They also submitted affidavits explaining staff members' security concerns specifically related to Whitford's participation in out-of-cell events. Whitford is serving a 60-year sentence for deliberate homicide and previously stabbed another inmate. Whitford had also "made threats to stab or otherwise assault staff members" which staff understandably found "concerning." Staff members also knew that "Whitford was convicted and sentenced for assaulting MSP staff with bodily fluids," and "had amassed disciplinary infractions for more than sixteen staff assaults, . . . more than fifteen instances of threatening staff, two instances of conspiring or attempting to assault staff, and two instances of possession of a weapon." In all, Whitford had amassed 188 disciplinary violations in his record at the time of summary judgment proceedings. Defendants had ample reasons to believe that prison safety was a particular concern in permitting Whitford's attendance at out-of-cell events like serving on the sweat lodge set-up crew.

The Clear Conduct Policy also satisfies the least restrictive means analysis in this situation. Defendants did not show that they "actually considered and rejected the efficacy of less restrictive measures before adopting the challenged practice." *Shakur v. Schriro*, 514 F.3d 878, 890 (9th Cir. 2008)) (quoting *Warsoldier*, 418 F.3d

at 996). However, they submitted affidavits explaining that MSP adopted the Clear Conduct Policy "after inmates were assaulted, contraband was trafficked, sexual assaults occurred, and gang members planned and conducted fights and assaults. This behavior disrupted communal activities by insincere inmates. The heightened restrictions were put in place to prevent a recurrence of these instances." As the district court found, this explanation "passes muster." Thus, while the Clear Conduct Policy did substantially burden Whitford's ability to be selected as a member of the sweat lodge set-up crew, it was justified by a compelling governmental interest in prison security as applied to him and was the least restrictive means of serving that interest, so it did not violate Whitford's rights under RLUIPA.

3. The Clear Conduct Policy did not substantially burden Whitford's ability to attend a powwow. Whitford does not make a *prima facie* showing of substantial burden because, even liberally construing his pro se district court filings, Whitford's powwow claim is clearly related to his inability to attend a high-side powwow. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, there is currently no high-side powwow scheduled, and it is unclear if and when one will occur. Whitford may request a powwow on the high-side but has not done so since 2018. Thus, any argument that Whitford and his fellow Native American religious practitioners will be unable to attend a high-side powwow at some point in the future is completely

6                                                                24-3177

speculative, so the Clear Conduct Policy did not violate Whitford's right to attend a powwow in violation of RLUIPA.

4. A compelling government interest in prison safety and security also justified the Clear Conduct Policy's application to drum group practice and is the least restrictive means of serving that interest. Whitford makes a *prima facie* case of substantial burden because the Clear Conduct Policy completely prohibits him from participating in the drum group practice. *See Greene*, 513 F.3d at 988. However, the burden is justified by a compelling governmental interest in prison security as applied to Whitford. *See Johnson*, 23 F.4th at 1217; *Holt*, 574 U.S. at 363. Defendants provided affiant testimony regarding general security issues with engaging in out-of-cell activities and legitimate specific concerns regarding inmate and staff safety posed by Whitford based on his long history of violence. While the affiants' testimony did not specifically discuss their concerns regarding Whitford's attendance at drum group practice, it discusses their concerns with Whitford's attendance at out-of-cell religious activities center events and other special events, and drum group practice falls into this category. Thus, Defendants met their burden of establishing a compelling government interest in prison security as applied to Whitford's participation in drum group practice.

Defendants also show that this was the least restrictive means of achieving this compelling governmental interest. Though Defendants did not show that they

24-3177

"actually considered and rejected the efficacy of less restrictive measures before adopting the challenged practice," they submitted affidavits explaining why the Policy was adopted to address problems with inmate and staff assault, sexual assault, contraband trafficking, and gang fights and assaults. *Shakur*, 514 F.3d at 890 (quoting *Warsoldier*, 418 F.3d at 996). This is sufficient to satisfy the least restrictive means analysis. *See Jones v. Slade*, 23 F.4th 1124, 1141 (9th Cir. 2022) ("[C]ourts should act with due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." (internal quotation marks and citation omitted)). Summary judgment was proper here.

**AFFIRMED.**